### John O'Neill v. Mabel Beland.

#### Gen. No. 13,058.

1. HANDWRITING—*how proof of, may be made by expert.* A handwriting expert should be allowed to state not only his conclusions but his reasons therefor.

2. HANDWRITING—*when proof of, by means of comparison, competent.* A handwriting expert may testify as to the authorship of handwriting where he bases his opinion upon a comparison thereof with other writings properly in evidence in the cause.

3. MARRIAGE—*what justifies breach of promise of.* The carrying on by one suing for breach of promise of marriage of a lewd and immoral correspondence intimating an improper relation with a married man, justifies a breach of such promise and is a defense to the action.

Action to recover damages for breach of promise of marriage. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1906. Reversed and remanded. Opinion filed April 30, 1907.

WILLIAM S. FORREST, CHARLES W. TAYLOR and BENJAMIN C. BACHRACH, for appellant.

ARNOLD TRIPP and JAMES EWING DAVIS, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.
Appellee, Mabel Beland, brought this action in the Su-

O'Neill v. Beland.

perior Court in assumpsit against appellant, John O'Neill, to recover damages for a breach of promise of marriage.

The declaration consists of four counts. Three counts are the usual counts for breach of promise of marriage. The fourth count was filed later, and in addition to the usual averments of a breach of promise of marriage avers that subsequent to the promise of marriage appellant seduced appellee and repeatedly had carnal intercourse with her, and as a result she became pregnant several times, and that abortions were performed upon her, at the request and under the orders and directions of appellant. The plea of the general issue was filed.

The trial resulted in a verdict and judgment for $15,000 against appellant.

The questions presented on this appeal relate to the sufficiency of the evidence, certain rulings of the trial court in admitting and excluding evidence, and the giving and refusing of instructions.

There is evidence in the record tending to show that on or about February 1, 1899, appellant promised to marry appellee at some time in the future, and that this contract subsisted until about the middle of January, 1904, when there was a breach of the contract by appellant. This claim of appellee was supported solely by her own oral testimony. The alleged contract was denied by appellant. As a further defense, which also supported the denial of the contract of marriage by appellant, there was put in evidence the general course of conduct and manner of life of appellee from February 1, 1899, to February, 1904; the relations which existed during that period between appellee and one George Neilan, between appellee and John Campbell, between appellee and Robert G. McClellan, and between appellee and one "Rob" whose last name was unknown at the time of the trial. At the time of the alleged contract of marriage appellee was not sixteen years of age and appellant was sixty-nine years old; and appellee was a member of appellant's family, as his ward or foster child.

When the entire record is considered there is, in our

opinion, a clear preponderance of the evidence against the plaintiff, both upon the question of the marriage contract and upon the question as to whether appellant, if there was a promise to marry, was absolved and released from his obligation to marry by reason of the acts and conduct of appellee subsequent to the promise. Inasmuch, however, as the judgment must be reversed and the cause remanded for a new trial for errors of law which intervened on the trial and prevented a full and fair submission of the case to the jury, we refrain from discussing the evidence and giving the reasons for our conclusion upon the merits of the cause.

Three letters purporting to be from the plaintiff, appellee, to appellant, written from Marquette, Michigan, dated respectively June 2, 1899, June .. and November 5, 1903, were received in evidence. The letter of June 2, 1899, was written in a backhand style of writing, and was acknowledged by appellee to have been written by her. She testified that it was in her usual handwriting. The letters dated Marquette, June .., and Marquette, Mich., November 5, 1903, are in different styles of writing. These letters appellee testified at first she did not think were in her handwriting, and finally, after being pressed to answer definitely, stated they were not in her handwriting.

In order to show that the letters were in the same handwriting and were written by her, appellant put on the witness stand Marshall D. Ewell, who qualified as a handwriting expert, and the three letters above referred to were placed in his hands for examination. After examining the letters he testified that in his opinion the three letters were in the same handwriting. Counsel for appellant then asked the witness to state how he came to that conclusion, to state the facts and reasons upon which he based his conclusion. To this the court sustained an objection of counsel for appellee. This ruling is assigned as error.

The letter dated Marquette, June .., according to the evidence, was written in June, 1899, and if it was written by appellee tends very strongly to show that appellee was not engaged to appellant at that time. The whole tenor

O'Neill v. Beland.

of the letter negatives that relation between appellant and appellee. Some of the expressions are particularly in point upon that question. We quote only one as follows: "I suppose Uncle Jack you are lonesome, no one to talk to you. I assure you I am. I think of you quite often there, you are all alone. When I come back, Uncle Jack, I am never going to leave you. I am going to stay with you until you die. I will take care of you. I won't get married either, and you can rely upon what I say."

The letter is a long one and there is not an expression or a suggestion in the four corners of the letter tending to show that appellee was engaged to, or under contract of marriage with appellant; but on the contrary that she was, as she described herself in the first Marquette letter of June 2, 1899, "your dutiful ward." It is impossible to believe that appellee would have written such a letter to appellant if they were then engaged. If they were not engaged in June, 1899, it is clear the diamond ring was not given by O'Neill to appellee as an engagement ring.

The remarks above made with regard to the June letter are applicable in the main to the letter of November 5, 1903.

It is clearly apparent, then, that it was of the utmost importance to appellant to establish the fact, if it be the fact, that appellee wrote these letters.

In C. & N. W. Ry. Co. v. Town of Cicero, 154 Ill., 656, at page 662, it was said: "The weight and value of the testimony of expert witnesses largely depend upon the foundations of fact and of reason upon which their opinions stand. The proffered evidence was competent, and it was competent in chief. The opinions are admissible along with the facts upon which they are based. Illinois & Wisconsin Railroad Co. v. Von Horn, 18 Ill., 257; Butler v. Mehrling, 15 id., 488." See also Chicago West Division Ry. Co. v. Lambert, 119 Ill., 255; Kieth & Wife v. Lothrop, 10 Cush., 453, 457; Demerritt v. Randall, 116 Mass., 331. Where a witness testifies to a fact, which is wholly or partially the result of reason exercised upon particular circumstances, it is obvious that the reasons of the witness for drawing that

conclusion are of the most essential importance, for the purpose of ascertaining whether his conclusion was a correct one. 1 Starkie on Ev. (3d Am. ed.), section 47, page 458.

Appellant had a right to have the testimony of this expert witness Ewell go to the jury with all the strength of the witness' grounds of knowledge and the reasons upon which his opinion was based, and to exclude them was to deprive appellant largely of the weight and value of the witness' testimony. This ruling of the court we think was reversible error.

The court made the same erroneous ruling in regard to the witness' testimony concerning the envelope on which the postmark was stamped showing it was mailed at Wausau, Wis., Dec. 9, 7:30 P., 1903, addressed to Miss Mabel O'Neill, 5900 Wabash Ave., Chicago, Ill., and the letter it contained; and the envelope on which the postmark was stamped showing it was mailed at Viroqua, Wis., Jany. 7, 1904, and addressed in the same way and containing a letter dated Viroqua, Wis., Jany. 7, 1904; and the envelope on which was stamped a postmark Milwaukee, Wis., Jany. 9, 7:30 P. M., 1904, containing a letter from "Rob" of that date. These rulings were important in view of the testimony of appellee with reference to these papers, as well as in view of the testimony of McClellan as to the authorship of the "Rob" letter.

Counsel for appellee insists that the court did not err in excluding the reasons or grounds for the opinion of the witness Ewell, because his original testimony was incompetent, being based on a comparison between the writing admitted to be genuine and the writing in dispute. Counsel cite in support of their proposition that proof of the signature of a party cannot be made by comparison with other signatures, cases in this State from Pate v. The People, 3 Gilm., 644, down to Riggs v. Powell, 142 Ill., 453, and also cases to the same effect in other jurisdictions. The rule of evidence contended for and announced in the cases referred to is too well settled in this State to be questioned. But

it has no application to this case where the writings and letters were properly in evidence in the case, and it was sought to show that the letters or writings in evidence were written by the same person.

In Rogers *et al.* v. Tyley, 144 Ill., 652, 665, it is said, referring to the rule contended for by counsel: "The general rule in this and other States of the Union is doubtless as above stated, but wherever that rule prevails, there is also the exception, that if the instrument to be used as a standard is properly in evidence in the case, for other purposes, then the signature, or paper in question, may be compared with it by the jury.  To this effect is Brobston v. Cahill, 64 Ill., 356.  Where other writings, admitted to be genuine, are already in the case, comparison may be made by the jury, with or without the aid of experts.  1 Greenleaf on Ev., section 578."

To the same effect is Himrod v. Gillman *et al.,* 147 Ill., 293, 300.

Appellant asked and the court refused to give the following instruction:

"Even if the jury should believe, from a preponderance of the evidence in this case, that during the month of February, 1899, John O'Neill and Mabel Beland mutually entered into a contract of marriage with each other, and that the defendant O'Neill from time to time for several years thereafter reiterated to Mabel Beland his promise to marry her; nevertheless, the court instructs the jury, as a matter of law, that if the jury should also believe, from a preponderance of the evidence, that in the years 1903 and 1904 Mabel Beland carried on an immodest, impure and lewd correspondence with a married man, and that John O'Neill learned of said correspondence and refused to carry out his part of said contract of marriage and to marry Mabel Beland because of said impure, immodest and lewd correspondence, if any such correspondence there was, the defendant, O'Neill, was justified in refusing to carry out his said contract of marriage and to marry Mabel Beland, and you should find the issues for the defendant."

The refusal of the court to give the instruction is assigned for error.

The evidence in the record tends to show that appellee conducted a written correspondence with McClellan, a traveling salesman and a married man. Appellee admitted on the witness stand during the trial of the case that she answered all of the McClellan letters except two. Appellant testified that appellee told him that she answered the ten letters from a married man, about which he spoke to her, namely, the nine McClellan letters and the "Rob" letter. The answers of appellee to the letters are not in evidence because McClellan testified that they were destroyed by him. Appellee did not contradict the testimony of O'Neill upon that point, or refer to it in any way in her testimony.

We cannot take the time to refer at length to the correspondence to show that it was under the circumstances such a correspondence as is referred to in the refused instruction. Appellee, it appears, met McClellan in a Pullman car while she was going from Chicago to Marquette, Michigan, about November 1, 1903, and that he then told her he was a married man. The correspondence shows that about November 5, 1903, McClellan and appellee attended a dance at Marquette and passed themselves off as man and wife at the dance. McClellan opens the correspondence by writing appellee from Chicago under date of November 7, 1903, in which he refers to their passing as man and wife at the dance and that he had told his wife about spending the evening with appellee but did not mention the dance. He asks her to write him on Monday at Houghton, Mich.

McClellan's next letter to appellee is dated "Houghton, Mich., Nov. 9, 1903," and is addressed "My dear Mabel," and the first sentence is: "Well I received your very welcome letter to-night," showing that appellee answered McClellan's first letter. Without referring to any of the other expressions in the letter indicating great familiarity on a short acquaintance, we quote one: "I am afraid I cannot come again to Marquette till next May, altho I would like

O'Neill v. Beland.

to do so *just for one night with you,* so will anticipate seeing you soon in Chicago."

In his letter to appellee dated Marinette, Wis., Nov. 16, 1903, McClellan complains of the difficulty he has experienced in getting into communication with appellee over the long distance telephone and acknowledges receipt of her "lovely letter." He seeks in this letter to arrange to meet appellee at Green Bay and says: "Do you know, Little one, I believe I like you very much and would like you more if you would let me and *I Dared.* I got those lovely \* \* \* but they are nothing like the Real thing, are they?" He closes the letter as follows: "Well Dear I'll better chop off. Remember me to all and accept lots of Love and Kisses (will give you the *Genuine ones* if you wish when I see you)."

McClellan writes appellee from Joliet, November 27, 1903, telling her he is going to Racine, Wis., on Monday, and that he would like to see her again and says: "Hope you can arrange to go to Racine and Milwaukee with me on Monday. I will be good to you."

In McClellan's letter to appellee dated Viroqua, Wis., Jany. 7, 1904, he speaks of the jealousy of his wife because of his acquaintance with appellee and says: "She says she will lay a trap and catch us but what of it, only I hope she don't succeed. I am afraid she is a mind reader for she certainly thinks there is more than Friendship in our short acquaintance."

There is much more in the letters of McClellan to appellee of like character and significance which we cannot take the time to refer to. That the letters are impure, immodest and lewd, and such as no modest and pure minded girl, engaged to be married, would receive from any man, whether married or unmarried, and answer them, thereby encouraging McClellan to continue the correspondence, cannot be doubted. They afford sufficient evidence upon which to base the refused instruction. In our opinion it was reversible error to refuse to give the instruction.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*