THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSE GONZALES, Defendant-Appellant.

Second District   No. 78-414

Opinion filed December 21, 1979.

Mary Robinson and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Gene L. Armentrout, State's Attorney, of Geneva (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

The sole question raised by this case is whether the submission to the jury of the five vials of blood deprived defendant of a fair trial.

Following a trial by jury, defendant, Jose Gonzales, was found guilty of aggravated kidnapping, two counts of deviate sexual assault, aggravated battery and armed violence. He was sentenced to 12 to 20

years for aggravated kidnapping, 12 to 20 years for deviate sexual assault, two to six years for aggravated battery, and one to three years for the armed violence, all sentences to run concurrently. Defendant appeals.

On November 19, 1977, the complaining witness left the Bowling Green Bowling Alley at 9:15 or 9:30 p.m. As she was entering her car, she was accosted by a man who displayed a knife and told her to move over. The man got behind the wheel and proceeded to drive the car west on Roosevelt Road. He put his right arm around her neck and held the knife along the right side of her face. At a red light he forced her to place her hand onto his groin. The man then drove to a motel parking lot in St. Charles, where he attempted to force her to commit an act of oral sex. When she resisted, he used his knife to open her mouth and forced her to complete the act. She continued to resist and began screaming at which point he bit her on the right cheek. He then drove to a residential area where he parked the car and again forced her to commit an act of oral sex. He then pulled open her blouse, and during the struggle the knife went through her hand cutting the back of her hand and two fingers. She began to scream and cry, at which point he struck her three or four times on the face. She finally pushed him away, opened the car door and ran screaming to the nearest house. The people inside let her into the house, treated her hand and called the police and an ambulance. She was subsequently taken to the hospital where she received eight stitches in her fingers. At the trial, she identified the blue jean jacket, pants and tee shirt worn by the man that evening. She also stated that the man spoke in broken English. She then identified the defendant, whom she had never seen before, as the man who accosted her. On the night of the incident, she identified a photograph of the defendant at the police station.

Defendant was picked up by the St. Charles police on the evening of the incident when he was seen hitch-hiking north on Route 31 in St. Charles. The policeman testified that the defendant wore faded blue jeans and a blue jeans jacket which appeared to be blood-stained. The policeman also noticed bloodstains on defendant's hands. Defendant was arrested and searched, but no weapon was found. Defendant was read his *Miranda* warnings, which he indicated he understood. The policeman testified that defendant spoke with a Latin-Spanish accent. In response to questioning about the blood on his clothing, defendant claimed he cut his finger; however, no open bleeding wounds were found on defendant's body.

During the trial, Doris Eageny, a registered nurse, testified that she took blood samples from the defendant and the complaining witness. She identified three vials of blood as containing defendant's blood and two vials as containing the complaining witness' blood. Parmod Dhawan, a forensic scientist, testified that the samples taken from defendant were

type "O" and that the blood from the complaining witness was type "B". He further stated that his tests indicated that the stains on defendant's and the complaining witness' clothes were group "B" human blood. Furthermore, tests on the interior of Dierks' car indicated the presence of type "B" blood. No type "O" blood was discovered on any of the clothing not in the interior of the car. According to the witness, "B-type" blood is found in eight to 10 percent of the world's population, and "O-type" blood is found in 45 to 48 percent. The vials of blood were then admitted into evidence. Defendant's counsel made no objection.

The only defense witness was a friend of defendant who stated that defendant was at the bowling alley on the night of the incident, but that sometime between 10 and 11 o'clock that night he left with a girl under apparently friendly circumstances.

Following closing arguments, defense counsel objected to the submission to the jury of the five vials of blood on the ground that they would improperly affect the deliberations of the jury. The objection was overruled, and the trial court allowed the blood to go into the jury room. The jury found defendant guilty on all counts. The trial court subsequently sentenced defendant, and this appeal followed.

■■ Since defendant did not admit to the commission of this crime, his identity was the central question in his trial. The blood tests indicated that the blood on defendant's clothes was not his own and that the blood may have been the victim's. Thus, as the defendant concedes, the tests were relevant on the question of identity. Evidence which could be considered inflammatory will not be withheld if relevant and necessary to an issue in the case. (*People v. Griffith* (1978), 56 Ill. App. 3d 747, 754, 372 N.E.2d 404, 410.) Furthermore we conclude that the prejudicial effect of using the vials of blood was slight. The samples were taken under clinical processes which are within the ordinary experience of the average person. The quantity of the blood did not in any way relate to the nature or extent of the injuries nor to the severity of the crime. Thus, we conclude that the introduction of the vials of blood into evidence did not deprive defendant of a fair trial.

■■ Defendant, however, does not contend that the admission into evidence of the blood samples was error. Instead defendant, citing *People v. Elwell* (1977), 48 Ill. App. 3d 628, 362 N.E.2d 830 and *People v. Seaberry* (1978), 63 Ill. App. 3d 718, 380 N.E.2d 511, argues that the submission of the vials of blood to the jury was inflammatory and prejudicial. A trial judge is vested with considerable discretion in deciding what exhibits may be sent to the jury room. As a general rule the court may permit jurors to take with them tangible objects which have been duly admitted into evidence. (*People v. Dixon* (1978), 58 Ill. App. 3d 557, 561, 374 N.E.2d 900, 903 (murder weapon sent to jury room).) While

the instant case is distinguishable from *Elwell* and *Seaberry* in that in those cases the blood samples were not relevant to any material issue, we find that the submission of the vials of blood was an abuse of discretion. A jury might be aided in their understandings of a case from an examination of some items of physical evidence including in some cases a murder weapon. However, in this case the blood samples themselves were neither explicitly or intrinsically probative of the expert testimony of which they formed the basis. In short, we see no way these samples could have been an aid to the jury in their deliberations.

■■ While the trial court erred in submitting the exhibits in question to the jury, we find this error to be harmless. As discussed above, the evidence was clearly relevant and the prejudicial effect minimal. Moreover, the evidence of defendant's guilt was overwhelming. The complaining witness made both a photographic and in-court identification of the defendant. Defendant was picked up by police shortly after the crime was committed with blood stains on his clothing and hands. This blood was of type "B"; the victim's blood type was also "B", while the defendant's type was "O". In sum, we find the absence of any reasonable possibility that the error complained of contributed to defendant's conviction. *Schneble v. Florida* (1972), 405 U.S. 427, 432, 31 L. Ed. 2d 340, 345, 92 S. Ct. 1056.

Accordingly we affirm the decision of the Circuit Court of Kane County.

Affirmed.

WOODWARD and SEIDENFELD, JJ., concur.