THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EDGAR HOOVER, JR., Defendant-Appellant.

First District (2nd Division)   No. 79-1174

Opinion filed August 19, 1980.

Sam Adam, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Pamela J. Moran, and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Following a bench trial, defendant Edgar Hoover, a Chicago police officer, was found guilty of the theft and forgery of another policeman's paycheck. Defendant was sentenced to 30 months' conditional discharge with the stipulation that he make restitution of the amount of the stolen check ($542.25) to the currency exchange which honored the forged instrument. Defendant had taken this appeal, alleging that the finding of guilty by the trial court was improper since he did not waive trial by jury, and that the testimony of the State's handwriting expert was insufficient to prove him guilty beyond a reasonable doubt.

On March 1, 1977, Officer Willie Eaglin went to his assigned police station at 365 West Oak Street to obtain his paycheck. He went through the stacks of checks and, not finding his own, notified Officer French of the security unit on duty. When French could not find the check either, Eaglin formally reported the check as missing. On June 30, 1977, Eaglin and several other persons gave handwriting exemplars to the Chicago Police Department. A document examiner for the department examined the submitted exemplars and compared them to Eaglin's check, which by this time had been returned with a purportedly forged endorsement. Following examination of these documents, Officer Hoover, assigned to the same station as Eaglin, was arrested and indicted for theft, alteration of a document, presentation of the forged instrument, and possession with intent to deliver the forged instrument.

Immediately prior to the trial, the record reflects the following exchange:

"The Clerk: Edgar Hoover.

                         ❋ ❋ ❋

Mr. Coghlan [defense attorney]: We are ready for trial, Judge.

Mr. Crystal [assistant State's Attorney]: Good afternoon, your Honor.

                         ❋ ❋ ❋

The Court: Ready for trial?

Mr. Crystal: Yes, your Honor.

The Court: Bench or jury?

Mr. Coghlan: Bench trial, your honor.

The Court: All right, we will proceed immediately.

Mr. Crystal: You want a motion to exclude witnesses?

Mr. Coghlan: Yes, motion to exclude witnesses.

Mr. Crystal: State joins in that motion.

The Court: Anyone who is going to testify in the Hoover case will kindly step outside or step in the back here, one or the other. I will expect the attorneys to take care of placing you. Call your first witness."

The State made its opening statement and the first witness, Officer Eaglin, was called. He testified about the general events which led to his discovery of the missing check. Eaglin also identified the paycheck in question but stated that he had not signed his name on the back. Ernestine Warthon, cashier at the currency exchange where the forged check was cashed, testified she had initialed the check. She stated that the letters "N.C.," also on the back of the check, indicated that it had been presented by a policeman in uniform, who, according to currency exchange policy, was not charged for the service of cashing the check. Since it was stamped March 3, Warthon could delimit the time the check was presented to either March 2 or March 3. She could not identify the person who presented the check or the time or date when it was cashed. Harold Freedberg, the owner of the currency exchange, verified Warthon's testimony about currency exchange policy and also stated that he was unable to identify the person who presented the check.

Officer Kenneth French, the security officer on duty when Eaglin discovered that his check was missing, testified that defendant Hoover came in and obtained his check at about 10 a.m. on the day in question. French stated that he saw defendant's name on the check in defendant's possession and did not observe defendant taking any check other than that one. Approximately 40 minutes after defendant left, Eaglin reported that his check was not in the stack.

The State's final witness was Maureen Casey, chief document examiner for the Chicago Police Department. Following graduation from Illinois College with a major in chemistry, she trained as a questioned document examiner by completing a three- to four-year apprenticeship with the Chicago crime laboratory. At the time of the trial, she had been employed by the Department as an examiner for 15 years.

She testified that Eaglin's paycheck and handwriting exemplars belonging to 29 subjects were submitted to her for comparison testing. Seventeen additional exemplars were supplied at a subsequent time. During her testing, she found all differences (no similarities) between

Eaglin's exemplar and the questioned endorsement. She emphasized at trial that there was "[n]o attempt in the questioned endorsement to copy or simulate any of the characteristics in the known signature of Eaglin." Her testimony then detailed extensively, with the assistance of photographs and enlarged handwriting exemplars, the similarities between the questioned signature and defendant's handwriting. She stated unequivocally that the questioned signature was that of defendant because she found all similarities between his exemplar and the forged endorsement.

On cross-examination, Casey ackowledged that there were changes and modifications between the handwriting on the questioned document and defendant's exemplar. She stated, however, that these were not dissimilarities which would cast doubt on the originator of the two writings. Rather these were typically occurring differences for which there were many explanations including conscious modification and normal, periodic variation.

The State rested its case and defendant's motion for a directed verdict was denied as to seven counts and allowed as to one of the two counts of theft (obtaining money from a currency exchange by deception).

The defendant's case consisted of two character witnesses and defendant's own testimony. Defendant testified that he was presently 41 years old and at the time of the incident was assigned to the Cabrini Green police station in Chicago. He stated that on the date in question he went to the station house, picked up his check, and showed it to French after obtaining it from the stack. Defendant heard Eaglin say his check was missing, and soon thereafter, Lieutenant Mayo, also a security officer, called defendant into the room and asked him to make sure Eaglin's check had not adhered to his own. Defendant testified that he pulled his check from his pocket in the presence of Eaglin, French, and Mayo, and showed each that he had only his own check.

Defendant further testified that since he knew the owner of the currency exchange (Harold Freedberg) personally, he would never choose that exchange to tender a forged check. He also denied the forgery and theft.

The trial court noted that it had searched the testimony and evidence for some reasonable doubt but was forced to conclude that even the eye of a nonexpert could determine that the signatures on the endorsement and on defendant's exemplar were written by the same hand. Defendant was found guilty. This appeal followed.

Defendant first contends that his right to trial by jury was violated where no signed jury waiver appears in the record and where the record is otherwise silent as to defendant's waiver of a jury trial. The State,

however, disputes defendant's claims and maintains that the record demonstrates that a jury waiver was signed by defendant and that the record is not silent but instead establishes defendant's knowing and intelligent waiver. The State also asserts that the propriety of this waiver is demonstrated by defendant's failure to raise an objection to the bench trial in his post-trial motion.

■■ *People v. Bristow* (1980), 80 Ill. App. 3d 535, 400 N.E.2d 511, is a recent example from a line of cases holding that the right to trial by jury is such a fundamental, substantial right that failure to raise the issue in a post-trial motion will not result in waiver. (See *Bristow*, at 538; *People v. Banks* (1979), 71 Ill. App. 3d 15, 18, 389 N.E.2d 180.) Thus denial to a defendant of the right to knowingly and understandingly choose between a jury or bench trial would be a "plain error or defect" which can be brought to the reviewing court's attention although not raised below. (See Ill. Rev. Stat. 1979, ch. 110A, par. 615(a); see also *People v. Walton* (1979), 77 Ill. App. 3d 905, 906, 396 N.E.2d 841.) Consideration of the merits of the claim in the instant case though, demonstrates that the requirements of the Code of Criminal Procedure of 1963 ("Every person accused of an offense shall have the right to a trial by jury unless understandingly waived by defendant in open court") and the sixth amendment to the United States Constitution ("In all criminal prosecutions, the accused shall enjoy the right to * * * trial, by an impartial jury") were met. Ill. Rev. Stat. 1979, ch. 38, par. 103—6; U.S. Const., amend. VI.

The case of *People v. Thompson* (1976), 38 Ill. App. 3d 101, 347 N.E.2d 481, not cited by either party to this appeal, presented this court with a strikingly similar fact pattern and the same legal issue. There, as here, no signed jury waiver appeared in the record. In *Thompson*, as in the case at bar, a notation that trial by jury had been waived was entered by a clerk prior to trial on the memorandum of orders sheet. The colloquy in open court in the instant case (as set out above) parallels that in *Thompson*:

"THE COURT: Put yourself on record.

MR. LEVITT: Stanford Levitt. And I represent Ernest and Betty Thompson.

MR. HORWITZ: The State is ready for trial at this time.

MR. LEVITT: The defense is ready, if the Court please.

THE COURT: On both of these?

MR. HORWITZ: Yes.

THE COURT: Is there going to be a jury?

MR. LEVITT: Non jury.

THE COURT: Bench trial. We will start as soon as we get through with the call. Are you ready to proceed this morning?" *Thompson*, 38 Ill. App. 3d 101, 102-03.

■■ Both *Thompson* and the instant case are distinguishable from those cases where the record is silent or where the election is indicated by the trial court without either an express personal choice by defendant or a clear representation of counsel for defendant. (See *Bristow*, at 537-38; *People v. French* (1980), 84 Ill. App. 3d 60, 61, 404 N.E.2d 1136.) Rather, as we held in *Thompson*, an express waiver in open court of the right to jury trial by defense counsel in defendant's presence is binding upon defendant. (See also *People v. Murrell* (1975), 60 Ill. 2d 287, 290, 326 N.E.2d 762.) The better practice, as presented in the American Bar Association Standards, would have been for the trial court to have obtained a personal waiver by defendant either in writing or in open court for the record. (ABA Standards, Trial by Jury §1.2(b) (1974); see, *e.g.*, *Thompson*, at 105-06.) The procedure followed in the instant case, however, while not preferred, is not constitutionally defective or violative of the rights of defendants, and, therefore, does not constitute reversible error. *E.g.*, *Murrell*, at 291.

Defendant raises as his second issue the fact that his conviction rested primarily on the evidence elicited from Casey, the questioned document examiner. He contends that the State has not sustained its burden of proof beyond a reasonable doubt when the only evidence directly contradicting defendant's denial of participation in the crime is the opinion of a handwriting expert.

■■■ In Illinois, the trier of fact may examine handwriting exemplars to determine the source of questioned handwriting but in the first instance the comparison must be made in open court and in the defendant's presence. (*People v. Harter* (1972), 4 Ill. App. 3d 772, 776, 282 N.E.2d 10.) It is equally well recognized that the genuineness of a signature is a proper question for a handwriting expert. (*Miles v. Graham* (1972), 7 Ill. App. 3d 17, 19, 286 N.E.2d 497.) The general requirement for such testimony is that the expert base his opinion upon a comparison with other writings properly in evidence. (*O'Neill v. Beland* (1907), 133 Ill. App. 594, 599.) The exemplars used for comparison in the instant case were stipulated as genuine by the defense. Defendant similarly does not object to the foundation which was laid to qualify Casey as an expert in the examination of questioned documents. The objection, therefore, is solely to the weight of the evidence and to possible bias resulting from Casey's employment by the Chicago Police Department.

■■■ During her testimony, Casey explicitly set out those facts (similarities and dissimilarities in the handwriting exemplars) which formed the basis for her conclusion that defendant executed the forged signature. She described these factors and illustrated each with sufficient particularity to allow the trier of fact to evaluate and accept the expert's opinion. (See generally A. Moenssens & F. Inbau, Scientific Evidence 463-78 (2d ed.

1978).) It is fundamental that questions of credibility of witnesses and weight to be accorded the evidence are matters particularly within the purview of the trier of fact. Where there is no showing of bias or reason to fabricate on Casey's part, the mere fact that she was employed by the Chicago Police Department will not raise a presumption on appeal that her testimony was tainted. Instead, this consideration would be a matter for the trier of fact to weigh in regard to Casey's credibility. A reviewing court will not set aside a trial court's finding of guilt nor will it substitute its judgment for that of the trier of fact unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 227, 367 N.E.2d 666.) In the instant case, the evidence in support of the finding of guilt was clearly satisfactory and, thus, we would be unjustified in reversing the trial court's judgment on the weight of the evidence. *People v. Benedik* (1974), 56 Ill. 2d 306, 310, 307 N.E.2d 382.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

PERLIN, P. J., and HARTMAN, J., concur.