THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAUL ROBERTS, Defendant-Appellant.

First District (5th Division)  No. 78-2091

Opinion filed September 18, 1981.

Ralph Ruebner and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Georgia A. Buglass, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Following a jury trial, defendant was found guilty of two counts of official misconduct and sentenced to three years probation and one year of periodic imprisonment. On appeal, he contends that: (1) he was denied due process where evidence of other acts of misconduct was admitted at his trial; (2) the prosecutor made improper opening and closing statements; (3) the trial court erred in allowing the jury to use his handwriting exemplars in its deliberations; and (4) he was not proven guilty beyond a reasonable doubt. We reverse and remand. The pertinent facts follow.

Defendant, who was president of the Central Area Park District in Maywood from 1968 to 1969 and from 1971 to June 3, 1975, was indicted for six counts of official misconduct. Two counts were *nolle prossed* prior to trial. Counts I and II alleged that he solicited and accepted a fee of $6,000 in his capacity as a public official from William Valkner on or about April 8, 1974. Counts IV and V alleged that he solicited and accepted a $2,000 fee from Valkner on or about May 2, 1974.

Prior to trial, defense counsel objected to the State's motion request-

ing the court to order defendant to provide handwriting exemplars. The court granted the State's request and reserved until later the question of whether this exemplar could be used in examination or entered before the jury.

In his opening statement, the prosecutor told the jury that Valkner operated a landscaping business and had to pay defendant in order to get the contract to do landscaping for the Central Area Park in Maywood. He indicated that defendant was thrown out of office. Defense counsel objected, but the State indicated the evidence would show this. The prosecutor continued his statement, telling the jurors that the evidence would show that Valkner was required to carpet defendant's girlfriend's house, to which the defense objected and was refused a sidebar.

The jury was also told that defendant told Valkner he would get paid after a tax referendum. The prosecutor indicated that defendant held a tax referendum to obtain more money to pay off contractors from whom he had been stealing. Defense objected but was overruled. The prosecutor further stated that the day the new president of the park district was elected, defendant hired people to take records out of the park district. Defense counsel's objection to this statement was also overruled.

Lastly, the prosecutor indicated that defendant received $8,000 and services from Valkner so that Valkner could get paid from a public body. The defense moved for a mistrial at the close of the State's opening statement, indicating it contained inflammatory characterizations and statements beyond the evidence. The court reversed its earlier rulings, thus sustaining defense's objections, but indicated that the evidence of the removal of the records would be admitted if the State could connect it up, and denied the defense motion for a mistrial.

Following defense's opening statement, the court indicated that it was reversing its ruling on the admission of other work done because of its reading of applicable law and because the defense could have made a motion *in limine* to exclude this evidence. The court told the jury, upon their return to the courtroom, that the objections to the State's opening statement were overruled, but not to consider it as evidence.

Valkner testified that he was president of the Abendale Landscaping Company until 1975 when it went out of business. He submitted a bid to the Central Area Park District in 1973 when he received the plans and bid specifications of the project. He met with Alan Caskey in the early or middle part of January 1974 at the park district offices. Defendant was also present at this meeting. Valkner told defendant that he could not pay the $6,000 that he had requested unless it was returned to him in salary, and, only if defendant would agree to pay the income taxes on that amount. Defendant agreed to pay $1,200 to Valkner to cover taxes. He

received the written contract from defendant and was told that he would also have to decorate and furnish a park district office.

Valkner stated that he prepared a pay request for $22,000 and submitted it to defendant, who told him he would have to pay back the $6,000 previously agreed to. He told defendant that it would be difficult to justify his pay request because inside work was not allowed under HUD funding. He was told to redo the pay request to accommodate the $6,000. He then received a check from the park district in the amount of $28,000, of which he returned $6,000 to defendant.

Valkner met with defendant and Theodore Elders, the park district's treasurer in April 1974. He was told there would have to be a second pay-off of $1,500 done in the same way as the first. After Elders left the office, defendant increased the amount to $2,000. He prepared another pay request for $23,700 and received payment from the park district, whereupon he met defendant at the home of Geraldine Broome on May 2, 1974, and returned $2,000 of these monies to him. He had been at Broome's home on a prior occasion to remove a broken tree. Defendant requested him to relandscape his yard, for which the park district was billed. He was also requested to redecorate Broome's basement and install carpeting in her bedroom and hallway. He did not redecorate the basement but he did install the carpeting and added this amount to his contract.

Valkner indicated that he submitted more pay requests under the contract as he completed all the work. In June 1974, defendant informed him that the park district was low on funds and there would be no money until the tax revenues came in. In October 1974 he received a $2,500 check from defendant. Defendant told him that once a tax referendum was passed he would get paid more money.

On cross-examination, Valkner stated that he recorded the $6,000 and the $2,000 payments to defendant on company books as an officer's loan. He also admitted that he did not pay Federal or social security taxes for his employees, even though he filed sworn quarterly statements with the government, indicating these amounts were being deposited.

At the end of Valkner's testimony, the State indicated it was going to call Broome to testify. The defense made a motion to exclude her as a witness as her testimony was not relevant. The State indicated that her testimony would in part corroborate Valkner, and this evidence was so entwined that the offense of putting in the carpeting would show the relationship between Valkner and defendant. The defense indicated that the common scheme or design exception did not apply as there was no evidence to indicate that Valkner was required to do the work in order to get paid. The court refused to allow Broome to testify, indicating there

was no exception for admission of this evidence to show a relationship of the parties.

The State raised defendant's subsequent indictment activity later, stating that it explained the reason and setting of payments, showing a scheme or design of defendant to use his position to enrich himself. The defense responded that defendant was not charged with the subsequent acts and moved for a mistrial based upon the State's misrepresentation of the testimony. The court denied the motion for a mistrial and agreed to instruct the jury about the Broome matter at the time of the jury instructions.

Defense's motion to dismiss based on improper testimony, and a motion for a directed verdict were denied.

OPINION

Defendant initially contends that he was denied due process and the right to a fair trial where evidence of other crimes or other acts of misconduct were admitted at his trial.

■■ Our courts have followed the long-settled rule that the admission of other offenses is prejudicial error if used to show that defendant has a propensity to engage in criminal activity (*People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200; *People v. Satchell* (1981), 94 Ill. App. 3d 422, 418 N.E.2d 1063); however, such evidence is admissible if it establishes identity, intent, absence of mistake, motive, design or knowledge. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238.) In determining whether to admit evidence of other crimes, our courts must consider whether the evidence of other crimes is so clearly connected with the main issue that it tends to prove the accused guilty of the crime for which he is being tried. (*People v. Cross* (1981), 96 Ill. App. 3d 268.) And we must balance the actual need for the evidence and its convincingness and strength against the degree of prejudice that will result from its admission. *People v. Connors* (1980), 82 Ill. App. 3d 312, 402 N.E.2d 773.

The defense contends that Valkner's testimony regarding the use of HUD funds for remodelling park district offices was irrelevant to the charge of payoffs. Additionally, there was no proof that this extra indictment offense occurred and that defendant actually committed or participated in it. Further, the State in its opening statement, over objection, told the jury that Valkner was required to do work at defendant's mother's house; that defendant held a tax referendum to raise money to pay off contractors from whom he received kickbacks and that he was thrown out of office. Moreover, at trial, Valkner testified that he installed carpeting at Broome's house, relandscaped defendant's lawn and included these items in his park district billing. The State, however, contends that this evidence was relevant to show the scheme employed by

defendant to accomplish the crimes for which he was charged. The trial court gave the jury a general instruction that the jury was not to consider other crimes or improper conduct other than those charged in the indictment.

■■ We think it significant that at the close of the State's opening statement the court granted defense a sidebar on these matters that came to the jury's attention. It denied the defense's motion for a mistrial but sustained its objections to the other crimes evidence except the removal of records. However, at the close of the defense's opening statement, the court again reversed its ruling. Later in the trial, the court reversed itself once again on these matters, determining that the evidence of other crimes should not come in; however, it was decided that it would be best to wait until the jury instructions to cure this error. We point out that the jury had already heard this evidence and we believe that this evidence of defendant's other misconduct may have had the effect of "overpersuading the jury," resulting in his conviction because they felt he was a "bad person deserving punishment." *People v. Lindgren*, at 137.

■■ We are not convinced that this evidence shows a continuing scheme employed by defendant as the State suggests. The State's reliance on *People v. Mitchell* (1981), 95 Ill. App. 3d 779, 420 N.E.2d 415, which allows the admission of subsequent crimes if used to show *modus operandi*, is inapplicable in this instance. In *Mitchell*, defendant was charged with the murder of his former mother-in-law in Berwyn. The court admitted evidence of the crime of battery which defendant committed upon his former wife and father-in-law in Florida. The factors involved in this case which allowed the admission of subsequent crimes were the similarity of attack in Florida with the results in Berwyn and the close proximity of time involved in the assaults which brought this within the purview of *modus operandi*. In the instant case, Valkner's testimony up to the time of the two payoffs, if believed, and the documentary evidence may have been sufficient to prove defendant's guilt. We believe that the relandscaping of defendant's lawn as well as the carpeting of Broome's house, which all occurred subsequent to the crimes charged in the indictment, had the effect of bolstering the State's case against defendant and are dissimilar to the charge in this case. Further, there was no evidence adduced that HUD prohibited the use of its funds in the manner employed by defendant, nor was there evidence that defendant was charged with misuse of Federal funds. The erroneous admission of other evidence may be so prejudicial as to influence an otherwise unbiased jury, so that reversal is necessitated. (*People v. Lindgren.*) We conclude that the admission of this evidence was not cured by the court's general instruction to the jury to disregard other crimes or misconduct and was extremely prejudicial. As such, we believe defendant's right to an

unbiased jury was violated by the admission of these extraneous matters. ■■ Defendant next contends that the prosecutor in his opening and closing statements made numerous comments on matters not in evidence and made inflammatory remarks against defense counsel. Specifically, as to the opening statements, defense counsel asserts that the State made references to a conversation between Caskey and Valkner; however, there was no evidence presented at trial to prove the State's remark regarding the statements Caskey made to Valkner. The State also remarked that defendant was thrown out of office but offered no evidence to prove this. Further, the defense contends that the State offered no evidence to show that a tax referendum was held for any illegal purpose, although this was suggested in the opening statement, nor was there any proof that defendant hired people to remove Park District records in an effort to conceal his misconduct. The State concedes errors in the prosecution's remarks concerning the tax referendum as well as the statement that defendant hired people to remove park district records. However, they maintain that any possible harm was cured by instructions to the jury that opening statements are not evidence, that statements not based on the evidence and allegations of other crimes should be disregarded.

■■ It is well settled that the function of the opening statement is to apprise the jury as to what each party expects the evidence to prove in the course of a trial. In a criminal case, it is an outline of facts which the prosecution in good faith expects to prove and it is improper, with foreknowledge, to include matters in an opening statement which are not thereafter proved. (*People v. Platter* (1980), 89 Ill. App. 3d 803, 412 N.E.2d 181.) We do not believe the general instructions to the jury sufficiently cured these errors. We believe the prosecution was aware at the time of its opening statement that it lacked sufficient proof to sustain these allegations.

■■ Similarly, the defense argues that the prosecution commented on matters not in evidence in his closing argument. Generally, a prosecutor is allowed wide latitude in closing arguments. On appeal, a verdict will not be set aside unless these remarks are clearly prejudicial, affecting the outcome of the case. *People v. Cross.*

■■ In the pending matter, the prosecution commented that Valkner was not paid for the work he completed; that defendant certified the check to Valkner because he was greedy; and that Valkner had no motive to fabricate. These comments were not objected to at trial. We thus hold that the argument based upon these allegedly prejudicial remarks does not rise to the status of plain error and must be considered waived. *People v. Platter.*

As to the other closing remarks, the record does not establish that

these arguments, individually or collectively, constitute error. *People v. Parks* (1977), 49 Ill. App. 3d 65, 363 N.E.2d 93.

Defendant next asserts that the prosecutor personally attacked defense counsel. In the closing argument the prosecution described the cross-examination of Valkner as a "smokescreen" and accused defense counsel of defaming and slandering Valkner by innuendo. He contends that this attack on defense counsel antagonized the jury.

The general rule in Illinois is that every defendant is entitled to a trial free from improper comments. The test of an improper comment is whether such constituted a material factor in defendant's conviction or resulted in substantial prejudice to him. (*People v. Nodal* (1980), 89 Ill. App. 3d 538, 411 N.E.2d 1087; *People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68.) This type of reference has been held to be nonprejudicial. (*People v. Robinson* (1980), 91 Ill. App. 3d 1138, 415 N.E.2d 585.) We thus find no prejudicial error from these comments, nor do we believe these comments accuse defense counsel of fabricating a defense.

Thirdly, defendant contends that the trial court erred when it permitted the jurors to use his handwriting exemplars in its deliberations over objection. Specifically, defense counsel objected to defendant handprinting the exemplar, which read:

> "° ° ° the money in dollars which Dick Sass received from Virginia McLawn was placed in her auto without any trouble. It was later covered by a slick cape and with luck would never be found, but a pussy jumped on the seat and killed the noxious trick,"

because it was highly prejudicial and irrelevant. The State argues that there is no evidence that the jurors were given these exemplars during deliberations even though they were admitted into evidence. In any event, these samples were presented in open court and defendant was allowed to cross-examine the expert witness. Defendant acknowledges that a jury in a criminal case can determine the genuineness of handwriting by comparison to other handwriting specimens. (Ill. Rev. Stat. 1977, ch. 51, par. 50.) Moreover, these specimens must be compared in open court and in defendant's presence. *People v. Hoover* (1980), 87 Ill. App. 3d 743, 410 N.E.2d 195.

As an established rule, the court may permit jurors to take with them writings and tangible objects which have been duly admitted into evidence. In this instance, these exemplars had been duly admitted. (*People v. Dixon* (1978), 58 Ill. App. 3d 557, 374 N.E.2d 900.) Assuming the jury did have these exemplars during deliberations, absent showing of prejudice or an abuse of discretion, this is not reversible error. *People v. Dixon*; *People v. Gonzales* (1979), 79 Ill. App. 3d 498, 398 N.E.2d 647.

Lastly, defendant argues that he was not proven guilty beyond a reasonable doubt. We have examined the record and believe there is

478

sufficient evidence to find defendant guilty; however, we believe this conviction must be reversed and remanded for a new trial in view of the cumulative errors, including the improper evidence of other crimes or misconduct and the improper opening statements which denied defendant a fair trial. *People v. Sullivan* (1978), 72 Ill. 2d 36, 377 N.E.2d 17.

Reversed and remanded.

SULLIVAN, P. J., and LORENZ, J., concur.