THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRYL RADER, Defendant-Appellant.

First District (1st Division) No. 86—2689

Opinion filed December 27, 1988.

454

Lawrence Wolf Levin and Steven R. Decker, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Susan J. Crane, and Matthew E. Coghlan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINLAN delivered the opinion of the court:

The defendant, Darryl Rader, was charged by indictment with two counts of armed robbery, two counts of armed violence and four counts of unlawful restraint. Following a jury trial in the circuit court of Cook County, the defendant was found guilty of the two counts of armed robbery and was sentenced to 10 years in the Illinois Department of Corrections. Defendant now appeals his conviction and sentence.

On January 23, 1983, February 27, 1983, and March 27, 1983, Brown's Chicken, located at 1111 West Addison in Chicago, was

robbed at gunpoint. All three robberies occurred on Sundays, just after closing time as the employees were cleaning the store. The defendant was arrested in connection with the three crimes, but the present case involves only the March 27, 1983, robbery.

The State presented three eyewitnesses to the March 27 robbery. The first eyewitness was Rudy Martinez. Martinez testified that he was working at Brown's when all three robberies occurred. He stated that the perpetrator of all three robberies was the same person, the defendant. Martinez said that during the March 27 robbery, the defendant put all the Brown's employees in a back room, except for an employee named Richard Lozada. After the defendant left the store, Martinez testified that Lozada walked into the back room where the rest of the employees were and said, "Damn, we just got robbed." Martinez also stated that he identified the defendant at a police lineup as the robber.

The second eyewitness was Deborah McKinley. McKinley was working at Brown's when two of the robberies occurred, including the March 27 robbery. McKinley testified that the defendant put all of the employees in a back room during the March 27 robbery. However, Richard Lozada, who was also working that evening, was not put in the back room with the others. McKinley also testified that she viewed a police lineup and identified the defendant as the robber who committed both the robberies that she witnessed.

Mohammed Baftehei, the manager for Brown's Chicken at the time of the robberies, was the State's third eyewitness. Baftehei testified that he was present at two of the robberies. Baftehei stated that when the defendant left after committing the March 27 robbery, Richard Lozada walked from the front of the store to the back, where the rest of the employees were, and said "Damn, we just got robbed." Baftehei also identified the defendant in a police lineup as the robber in both incidents.

Richard Lozada was the State's fourth witness. Lozada testified that he worked at Brown's Chicken from 1982-83. Lozada stated that he met the defendant in 1982, at a dance. Lozada also testified that the defendant came to see him sometime in December 1982, while Lozada was working at Brown's Chicken. The defendant asked Lozada how late he was working and whether any security was working that evening. Lozada said that he was present during the March 27 robbery and that he later determined that the robber was the defendant. Lozada also testified that he saw the defendant at a disco one week after the March 27 robbery, but that he just said "hi" to the defendant.

The prosecutor then questioned Lozada concerning a previous conversation that the prosecutors had with Lozada. Lozada responded that when he saw the defendant at the disco after the March 27 robbery, the defendant asked him if he knew what happened at Brown's Chicken several nights earlier. Lozada replied that it had been robbed. In response to further questions by the prosecutor, Lozada now denied telling detectives investigating the robberies that the defendant had called him before March 27 and denied that the defendant told him that he was going to rob Brown's Chicken. Lozada further denied telling the detectives that the defendant called him the day after the robbery, and also denied that the defendant gave him $200 for the robbery.

On cross-examination, Lozada stated that he was arrested for not showing up after being subpoenaed to testify in the defendant's case and that the prosecutors told him that the only way he would be able to get out of jail would be to testify. Lozada stated that he could not say for certain that the robber on March 27 was the defendant. He again denied having any conversations with the defendant concerning the robbery and denied receiving any money from the defendant for the robbery.

On redirect, Lozada testified that the defendant called him on the telephone a few days before he, Lozada, was to testify in the defendant's trial. Lozada also stated that he told the police officers after the March 27 robbery that the robber looked a lot like the defendant.

Detective Baldree, an officer who investigated the robberies, testified that Mohammed Baftehei identified the defendant three times at the police lineup. The first time was immediately after the lineup lights were turned on, the second time was after the officers went through the lineup procedure, and the third time was when the officers again went through the lineup procedure, this time with the individuals in the lineup wearing a coat with a hood, as the robber had.

On cross-examination, the detective admitted that there was an error in his report of the lineup regarding the time that the lineup took place. He also said that his report did not state that three different processes of identification were used in the lineup. Baldree attempted to explain that there were other reports of the lineup, but defense counsel would not let Baldree finish his answer. For example, when defense counsel showed him a report relative to the lineup, Baldree said, "There's a supplemental—" and was then interrupted by defense counsel. When defense counsel asked Baldree whether the report mentioned a hood being used, Baldree responded, "Not in *that* report." (Emphasis added.) Following more questions from defense

counsel about his report, Baldree stated, "Excuse me, sir. You keep referring to this report. This report is on another case. The report before that one should be the correct one ***."

Furthermore, on redirect, the following exchange took place, to which the defendant also objected: ·

"Q. [Prosecutor]: Now, when Mr. Levin says—questioned you about all those armed robberies and the report that you wrote, just how many were there, sir?

* * *

[Trial judge overruled defendant's objections.]

A. [Mr. Baldree]: I believe we charged him with seven.

DEFENSE ATTORNEY: Objection, Judge. Make the motion for mistrial.

THE COURT: Overruled.

* * *

THE COURT: There are seven reports. Go ahead.

Q. [Prosecutor]: And when you conduct certain line ups, you have to do a supplementary report for each of those seven armed robberies where there's a case report pending as to that?

DEFENSE ATTORNEY: Objection as to that. There's a motion in limine made and you sustained it.

THE COURT: Counsel, counsel. Sustained."

When the defense again asked for a mistrial based on this testimony, or alternatively, that the jury be informed that the defendant was acquitted of the other charges, the trial judge denied the motion. The court then stated that although it was not happy with the State mentioning the other armed robberies, a mistrial was not necessary because the State never said that the defendant was also the defendant in the seven robberies.

The next witness was Detective O'Leary, who stated that he met with Richard Lozada on April 29, 1983. The court instructed the jury that any conversation to which the detective would testify concerning Lozada was to be used for impeachment only and was not to be considered as substantive evidence. Thereafter, O'Leary stated that he talked to Lozada for approximately an hour, then went to the defendant's house, but did not find the defendant home. O'Leary had a second conversation with Lozada on April 30, 1983. At that time, Lozada told O'Leary that he had known the defendant for six months and that the defendant had asked Lozada about the security procedures at Brown's Chicken. He also told him that the defendant asked what time Brown's Chicken closed, and Lozada admitted to him that he

recognized the March 27 robber as the defendant. Further, O'Leary said Lozada told him that the defendant gave him $200 for the robbery and told him that he would get more money later. Following O'Leary's testimony, the State rested its case.

The defense presented three alibi witnesses for the defendant. Robert Rodriquez stated that he was with the defendant at a video arcade when the January 23 robbery took place. Rodriquez also testified that he was with the defendant at the Galaxy, a disco, when the March 27 robbery took place. Johnny Melendez testified that he was with the defendant on February 27 at the Alamo, another disco, when the second robbery took place. Alan Akerson also claimed that he was with the defendant at the Galaxy when the March 27 robbery occurred.

The defendant then testified in his own behalf. He said that he was at a video arcade on January 23, at the Alamo on February 27, and at the Galaxy on March 27. On cross-examination, the defendant testified that he had known Lozada since 1982 or 1983, and admitted that he had denied knowing Lozada at earlier trials because he only knew Lozada by his nickname, "Cougar."

On cross-examination, the defendant denied that he telephoned Lozada on August 10, 1986, after the present trial had commenced. He also denied going to the State's Attorney's office on August 11, 1986, and denied telling the State's Attorney's receptionist that his name was Abraham Sanchez and that he was a friend of Richard Lozada.

On rebuttal, the State presented Julia Morales, a receptionist for the State's Attorney. Morales testified that the defendant came into the office on August 11, 1986, and told her that his name was Abraham Sanchez. He also told her that he was looking for his friend, Richard Lozada. Eileen Walsh also testified that she was talking with Morales on August 11, 1986, when the defendant came in looking for Lozada. Walsh remembered hearing the defendant identify himself as Abraham. The State then rested in rebuttal.

The jury found the defendant guilty of two counts of armed robbery. The trial court denied defendant's post-trial motions and sentenced him to 10 years in the Illinois Department of Corrections.

■■ Defendant's first issue on appeal is that he was denied a fair trial because the prosecutor made prejudicial remarks and also attacked his character in the State's opening statement. The function of an opening statement is to inform the jury as to what each party expects the evidence to prove throughout the course of trial. (*People v. Roberts* (1981), 100 Ill. App. 3d 469, 476, 426 N.E.2d 1104, 1109.) In

a criminal case, the prosecutor's opening statement may outline what he, in good faith, expects to prove, but it cannot include facts that he knows in advance he will not or cannot prove. (*Roberts*, 100 Ill. App. 3d at 476, 426 N.E.2d at 1109.) In addition, every defendant has the right to a trial free from improper prejudicial comments or arguments by the prosecutor. (*People v. Bivens* (1987), 163 Ill. App. 3d 472, 482, 516 N.E.2d 738, 744.) Whether a prosecutor's comments or arguments constitute prejudicial error is evaluated according to the language used, its relation to the evidence, and the effect of the argument on the defendant's right to a fair and impartial trial. (*Bivens*, 163 Ill. App. 3d at 482, 516 N.E.2d at 744.) The scope and latitude of the opening statement are within the trial court's discretion. *People v. Hampton* (1979), 78 Ill. App. 3d 238, 243, 397 N.E.2d 117, 121.

The defendant claims that the prosecutor improperly stated that the police began investigating the defendant after talking with Lozada, thus implying that there was a connection between himself and Lozada. Defendant claims that the State never proved this connection at trial. He also claims that the prosecutor improperly put the defendant's character in issue when he told the jurors that, as they heard the evidence to picture the defendant not as he appeared at trial "surrounded by his lawyers with his hands folded at that table," but to picture him 3½ years ago, as he appeared at the time of the crime. The State argues that the prosecutor in good faith intended to and did, in fact, prove that the police investigated the defendant after talking with Lozada. The State also contends that the admonition to the jury not to picture the defendant as he appeared at trial was proper and did not refer to the defendant's character.

■ We find nothing prejudicial in the prosecutor's opening statement and find that the trial court did not abuse its discretion in allowing these remarks. As to the statement connecting Lozada with the defendant, evidence was introduced at trial that Lozada implicated the defendant in the robberies while talking with the police. Detective O'Leary testified that he went to the defendant's home after talking with Lozada because Lozada implicated the defendant in the robberies. Although Lozada denied telling the detectives that he spoke with the defendant about the March 27 robbery, the record shows that this testimony surprised the prosecution. It is clear, therefore, that the prosecutor in good faith expected to prove that the detectives came in contact with the defendant after speaking with Lozada.

In addition, the prosecutor's statement to the jurors not to picture the defendant as he appeared at trial, but to picture him at the time of the robberies, did not, as the defendant contends, put his character

in evidence. This statement was merely part of the prosecutor's outline of the trial and of the evidence, and accordingly, was not improper.

The defendant's second issue on appeal is that the trial court erroneously admitted Detective O'Leary's testimony to impeach Lozada, because it also implicated the defendant in the robbery. The defendant contends that a witness' out of court statement cannot be used to impeach him if the statement also proves the defendant's guilt. The State contends that although the impeachment testimony tended to prove the defendant's guilt, it was properly admissible because the jury was given a limiting instruction.

■ A threshold issue that we must address, although not raised by either party, is whether the impeachment of Lozada by the State was proper since Lozada was the State's witness. Historically, under the common law voucher rule, which was followed in Illinois, a party could not impeach his own witness. (See *Chicago City Ry. Co. v. Gregory* (1906), 221 Ill. 591, 77 N.E. 1112.) The voucher rule was gradually eroded as exceptions to the rule developed, until it was finally abolished in 1982 by Illinois Supreme Court Rule 238. (107 Ill. 2d R. 238.) This rule states: "The credibility of a witness may be attacked by any party, including the party calling him." (107 Ill. 2d R. 238(a).) The State, therefore, could properly impeach Lozada with his prior, inconsistent statements to Detective O'Leary. We now address whether the impeaching evidence was properly admitted even though the testimony also proved the defendant's guilt.

■ A prior inconsistent statement which is not admissible as substantive evidence may nonetheless be used for impeachment purposes to determine credibility. (*People v. Taglia* (1983), 113 Ill. App. 3d 260, 263, 446 N.E.2d 1276, 1279; *People v. Triplett* (1980), 87 Ill. App. 3d 763, 768, 409 N.E.2d 401, 406.) Prior inconsistent statements that bear directly on the defendant's guilt are also admissible, as long as the jury is instructed at the time of impeachment and at the close of the trial that the statement cannot be given substantive weight. (*People v. Bradford* (1985), 106 Ill. 2d 492, 501, 478 N.E.2d 1341, 1345.) The Illinois Supreme Court has further expanded the use of impeachment testimony to allow the impeachment of a witness through the use of defendant's prior contradictory statement, even when the contradictory statement was obtained in violation of the fourth amendment. *People v. James* (1988), 123 Ill. 2d 523, 528 N.E.2d 723.

■ In this case, at the time of impeachment, the trial court twice instructed the jury that the testimony was not substantive evidence and could only be used to determine credibility. The court repeated

this instruction at the close of all evidence. Given the trial court's repeated emphasis on the limited purpose of the impeachment testimony, considered in conjunction with the Illinois Supreme Court's recent recognition of expanded use of inculpatory statements for impeachment purposes, we find no error on the part of the trial court in permitting Detective O'Leary's testimony.

The third issue that the defendant raises on appeal is that he was denied a fair trial when the State improperly elicited testimony from Detective O'Leary that the defendant had been charged with seven prior armed robberies. Generally, admission of other offenses is prejudicial and reversible error when the other offenses are unrelated to the crime for which the defendant stands charged. (*People v. Morgan* (1983), 113 Ill. App. 3d 543, 548, 447 N.E.2d 1025, 1028.) An exception to this rule exists, however, if the evidence of other offenses establishes identity, intent, absence of mistake, motive, design, knowledge, a common scheme or design, or a fact material to the issue on trial. (*Morgan*, 113 Ill. App. 3d at 548, 447 N.E.2d at 1028; *Roberts*, 100 Ill. App. 3d at 474, 426 N.E.2d at 1108.) Ultimately, of course, the determination of the question of admissibility of evidence must balance the need for the evidence, the strength of the evidence, *i.e.*, its probative value, and the degree of prejudice that will result from its admission. (*Morgan*, 113 Ill. App. 3d at 548, 447 N.E.2d at 1028.) The determination of the admissibility of evidence, in such circumstances, is a matter within the sound discretion of the trial court. *Morgan*, 113 Ill. App. 3d at 548, 447 N.E.2d at 1028.

The defendant argues that the reference to the seven armed robberies was extremely prejudicial. He contends that his objection to the first reference to the seven armed robberies by the witness should have been sustained and the officer's remarks should have been stricken. According to the defendant, the error was compounded when the defense was prohibited, due to a motion *in limine*, from eliciting the fact that the defendant was acquitted seven times.

The State, on the other hand, argues that the first remarks by the officer were unsolicited and, since the prosecutor was inquiring on redirect as to the number of reports, and not the number of robberies, it was not tantamount to reversible error. The State also contends that even if these remarks constituted error, it was either harmless error or was cured by the trial court's instructions at the close of the evidence. Moreover, the State asserts that evidence against the defendant, independent of the remarks, was sufficient to convict the defendant.

We agree with the defendant that Detective Baldree's state-

ment was prejudicial. We note, however, that defendant did not make a motion to strike the testimony. Additionally, a review of the record indicates that Baldree's answer was unsolicited. Thus, the prosecutor's question was in response to defense counsel's cross-examination of Baldree, since the prosecutor was merely trying to show that there was more than one report of the lineup. The answer, thus, was clearly not responsive to the prosecutor's question, as Baldree answered, "I believe we charged him with seven." Although the statement was prejudicial, we cannot say that the answer amounted to reversible error. Three eyewitnesses clearly, as noted above, identified the defendant as the robber in all three robberies. Accordingly, there was such overwhelming evidence of the defendant's guilt, defendant cannot claim that the detective's statement amounted to reversible error.

Also, the prosecutor's inquiry concerning "each of those seven armed robberies" was clearly prejudicial because the prosecutor here made specific reference to the number of other offenses. But, the trial court properly sustained defense counsel's objections to this question and no further references were made to the other offenses. Hence, although there was error, the fact that the trial judge sustained the objection and the fact that there were no further references to the seven armed robberies served to cure the error here. Consequently, the trial court's rulings concerning the detective's testimony did not rise to the level of reversible error in view of the totality of evidence presented at trial.

Defendant's fourth issue on appeal is that he was denied a fair trial because the prosecutor made certain improper statements in his closing argument. Specifically, the defendant claims that the prosecutor improperly told the jury (1) that defense counsel wanted them to believe that all of the State's witnesses were lying; (2) that, on the stand, the defendant and the defendant's witnesses were actually the liars; (3) that the defense counsel was suborning perjury; (4) that the prosecution's witnesses were, in fact, truthful; (5) that the defendant was a "dude"; (6) that the jurors could use the impeachment testimony of Lozada for substantive evidence; and (7) that it is rare to find fingerprints at a crime scene, that police reports are unreliable, and that it was defendant's fault that Lozada was in jail for not obeying a subpoena. The defendant asserts that each of these remarks was prejudicial and caused him to receive an unfair trial. Conversely, the State contends that all remarks in closing were proper and were based on the evidence and reasonable inferences from the evidence.

A prosecutor is given great latitude in his closing argument and the propriety of his comments are within the trial court's discre-

tion. (*People v. Morrison* (1985), 137 Ill. App. 3d 171, 184, 484 N.E.2d 329, 339-40.) The trial court's determination regarding the propriety of the prosecutor's closing should be sustained absent an abuse of discretion. (*Morrison*, 137 Ill. App. 3d at 184, 484 N.E.2d at 339-40.) "In closing argument, the prosecution may base its argument on the evidence presented or reasonable inferences therefrom [citation]; respond to those comments by defense counsel which clearly invite or provoke a response [citation]; comment on the credibility of the defense witnesses [citation]; denounce the activities of defendants and urge that justice be administered [citation]; [and] highlight inconsistencies in defendant's argument ***." *Morrison*, 137 Ill. App. 3d at 184, 484 N.E.2d at 340.

 Regarding the first statement, the defendant claims that it was prejudicial error for the court to allow the prosecutor to say that the defense wanted the jurors to believe "that the victims [they] heard from are on some crusade *** [a]nd they lied in court to keep it up." The record shows, however, that in defense counsel's closing, he stated that the prosecution's witnesses "were intentionally lying. And *** they knew they were lying ***." Consequently, there was no prejudicial error in allowing the prosecutor's statement since it was clearly in response to defense counsel's statement. When a defendant's own argument invites statements in rebuttal, the defendant cannot then complain of those statements. *People v. Neumann* (1986), 148 Ill. App. 3d 362, 374, 499 N.E.2d 487, 495.

 ██ The defendant also complains that the prosecutor improperly and prejudicially called the defendant and his witnesses liars. It is not improper for the prosecution to assert that the defendant is lying if the evidence is conflicting or if such a statement is a fair inference from the evidence. (*People v. Townsend* (1985), 136 Ill. App. 3d 385, 395, 483 N.E.2d 340, 347.) In this case, there was sufficient conflicting evidence to support the prosecutor's statement that the defendant lied. Additionally, the prosecutor's statement that the defendant's witnesses lied was not improper. A party can comment on the credibility of witnesses in closing, but cannot interject his personal belief in the truth of their testimony. (*Townsend*, 136 Ill. App. 3d at 394, 483 N.E.2d at 347.) The record reveals that the prosecutor was merely commenting on the credibility of the defense witnesses and was not interjecting his personal belief in the truth of their testimony; thus, his statements were not improper.

 The defendant next claims that the prosecution prejudicially implied that defense counsel's job was to suborn perjury, when he made the following statements:

"Now, throughout the trial, [defense counsel has accused the prosecution] of preparing witnesses as if we staged these things or something or whatever they are saying. You heard it. First of all, I would say we're not here to suborn perjury. That's not what we do. Our duty, our sworn duty is to present the evidence to you. And that is what we did here.

Now you don't have to be real smart to figure out what his job is here, ladies and gentlemen."

The record reveals that the trial judge did not find that the prosecutor meant to imply, by these statements, that defense counsel's job was to suborn perjury. Normally, a trial judge is in the best position to judge the trial atmosphere in which a remark is made and to determine whether a remark has a prejudicial effect or not. Therefore, the trial judge's ruling should not be disturbed absent an abuse of discretion. *Bivens*, 163 Ill. App. 3d at 484, 516 N.E.2d at 745-46.

In this case, contrary to the trial court, we find that the prosecutor's comment was improper and that the court abused its discretion in allowing the comment. However, in light of the overwhelming evidence of the defendant's guilt, we do not find that the comment amounted to reversible error.

The defendant also alleges that the prosecutor improperly gave his opinion concerning the truthfulness of the State's witnesses. The prosecutor's statement of which the defendant complains was, "Now you heard the demeanor of those witnesses testifying. And you are the judges of the facts in this case. They told you what happened and they were honest with you. And they told you the truth." As stated previously, although a party may not interject in closing argument his personal belief concerning the veracity of witnesses, he can comment on the credibility of witnesses. We find the prosecutor's comments here concerning the truthfulness of the State's witnesses were merely comments on the credibility of the witnesses and did not reflect the prosecutor's personal belief.

The defendant asserts another error occurred when the prosecutor referred to the defendant as a "dude" and as a smooth guy with ice water in his veins. The defendant claims that this was an improper characterization of him. A prosecutor may not make statements in his closing argument designed solely to inflame the passion or arouse the prejudices of the jury. (*Bivens*, 163 Ill. App. 3d at 483, 516 N.E.2d at 744.) The record reveals, however, that the prosecutor's comment was made only in passing and was not so derogatory that the jurors could be prejudiced by the comment.

The defendant next argues that the prosecutor improperly

instructed the jury that they could use the impeachment testimony of Lozada for substantive evidence. The prosecutor stated, "You know *** before [Lozada] met [the prosecutor], he told Detective O'Leary what really happened. And you heard Detective O'Leary tell of [Lozada's] inconsistent statements, that is the statements he told back then that weren't what he said here at trial. Where he told Detective O'Leary that he saw the defendant come in there that night and knew him." The record reveals, however, that the prosecutor was merely drawing inferences from the testimony of Detective O'Leary and the testimony of Lozada. In a closing argument, a prosecutor may properly base his argument on the reasonable inferences to be drawn from the evidence. (*Morrison*, 137 Ill. App. 3d at 184, 484 N.E.2d at 340.) In addition, at this point, the trial judge again instructed the jury that this testimony was strictly for impeachment. There was, accordingly, no abuse of discretion by the trial court in allowing the prosecutor's closing comments.

The defendant's final contention regarding the prosecutor's closing argument is that the prosecutor improperly stated that fingerprints are rarely found at crime scenes, that police reports are unreliable, and that it was defendant's fault that Lozada was in jail for not obeying the subpoena. The record reveals, however, that these comments were in rebuttal to defense counsel's comments in his closing argument and, thus, were proper. *Neumann*, 148 Ill. App. 3d at 374, 499 N.E.2d at 495.

Defendant's fifth separate issue on appeal is that the trial court abused its discretion by allowing the prosecution to question the defendant concerning his alleged visit to the State's Attorney's office, purportedly to talk to Lozada. The defendant contends that this questioning went to collateral and immaterial matters, and that it was error to allow the prosecution to use this testimony to impeach the defendant.

Although a party may generally be impeached by any matter on cross-examination, he may not be impeached on a collateral matter. (*People v. Collins* (1985), 106 Ill. 2d 237, 269, 478 N.E.2d 267, 281.) Determining whether a matter is collateral is left to the sound discretion of the trial court, and this determination should not be disturbed on appeal absent a clear abuse of discretion and manifest prejudice to the defendant. (*Collins*, 106 Ill. 2d at 269, 478 N.E.2d at 281.) In the present case, there was sufficient evidence in the record for the trial court to conclude that the testimony regarding the defendant's visit to the State's Attorney's office was not a collateral matter. Thus, the court properly ruled that the testimony was rele-

vant to the issue of defendant's guilt because the evidence suggested that the defendant was attempting to influence Lozada's testimony.

 █ The sixth and final argument that the defendant raises on appeal is that the State failed to prove him guilty beyond a reasonable doubt. A reviewing court will not disturb a jury's verdict of guilty unless the evidence is so improbable that it raises a reasonable doubt as to guilt. (*Hampton*, 78 Ill. App. 3d at 241, 397 N.E.2d at 119.) The trier of fact determines the credibility of witnesses and the weight to be accorded their testimony, and its determination should not normally be disturbed on review. (*People v. Locascio* (1985), 106 Ill. 2d 529, 537, 478 N.E.2d 1358, 1361.) When the evidence is merely conflicting, the reviewing court will not disturb the finding of the trier of fact. *People v. Martin* (1983), 112 Ill. App. 3d 486, 500, 445 N.E.2d 795, 807.

 In this case, there was sufficient evidence to support the jury's verdict. The jury was able to observe the demeanor of all the witnesses. There were three eyewitnesses who testified that they recognized the defendant at the robberies and that they immediately identified the defendant at a police lineup. In addition, testimony at trial was conflicting in many respects, and this was for the trier of fact to resolve. We will not, as we have stated, disturb the jury's determination concerning the credibility of the witnesses on appeal.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed. Additionally, pursuant to *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319, and *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, we grant the State's request that the defendant be assessed $75 as costs for the State's defending this appeal and incorporate it as part of our judgment.

Judgment affirmed.

CAMPBELL, P.J., and MANNING, J., concur.