THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT MILLER, Defendant-Appellant.

First District (5th Division)   No. 1—89—1071

Opinion filed January 24, 1992.

Michael J. Pelletier and Gordon H. Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

Defendant, Robert Miller, was found guilty by a jury of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2), and sentenced to 10 years' imprisonment. He appeals, contending that he was denied a fair trial and his right of confrontation where the State made comments in opening and closing arguments and elicited testimony implying that he had been named as an accomplice by a nontestifying codefendant, and that the trial judge erred in not allowing him to introduce evidence to correct the erroneous implication. Defendant further contends that his sentence should be reduced or, alternatively, that he should be granted a new sentencing hearing, because the trial judge's characterization of the offense as "very aggravated" was not supported by the evidence. For the reasons set forth below, we affirm.

FACTS

Defendant, Robert Miller, was charged, along with Willie Gibson, Joseph Williams and Julius Moore, with the August 28, 1986, armed robbery of Leonard McKinnon. The defendants were tried separately.

In opening statements to the jury, the prosecution said that the defendant was one of a group of individuals who robbed McKinnon at gunpoint. The police apprehended one of the robbers, Willie Gibson, who was wearing a jacket taken from McKinnon. The prosecution went on to say "that individual, Gibson, was questioned and that led to the arrest of Robert Miller and that's the individual who's on trial today."

Counsel for defendant, in his opening statement, said that Gibson did not give the police defendant's name or address, but rather the name and address of another co-offender, Julius Moore. When the police went to Moore's apartment, they happened to find the defendant

asleep in the apartment, but found no evidence directly on him linking him to the crime.

The victim, McKinnon, testified that he was 55 years old and retired from the Illinois National Guard. On the evening of April 27, 1986, he had gone to a lounge at 41st and Wells at seven or eight o'clock after umpiring a softball game. He left the bar in his car at about 12:30 or one o'clock, after drinking approximately six beers. He was headed to an all-night diner at 61st and King Drive to get a sandwich.

At 48th and Michigan, he pulled into a lot to relieve himself. When he finished, he looked up and saw a small caliber pistol in his face. The person holding the gun told him "this is a stick-up" and to back up. When McKinnon backed up, he saw three other individuals ransacking the interior of his car. One of them took his car keys and opened and searched the trunk. The individual with the gun then told McKinnon to take off his jacket and gym shoes, give him his money and lie down. McKinnon obeyed. According to McKinnon, they took over $300 in currency and a coin purse containing a silver dollar and two Kennedy half dollars. They also took his sports watch and 14-carat gold ring with a cateye in it.

McKinnon remained on the ground facedown until he saw the four individuals on the other side of Michigan Avenue. He then went to the street and flagged down a patrol car. Upon telling the officers that he had just been robbed, they took him to the police station at 51st and Wentworth. About half an hour later, the police brought in an individual (later identified as Willie Gibson) who was wearing McKinnon's jacket, a blue jacket with "Chicago" down the side and "Leonard" on it, and McKinnon's new Etonic gym shoes.

McKinnon then went home, but returned to the station the next morning when asked to by the police. There he identified three individuals in a lineup, one of whom was the defendant.

McKinnon also identified the defendant in open court, but was unable to describe with specificity what defendant was doing during the robbery. He could only say that the defendant was one of three individuals going through his car and trunk while a fourth person held a gun to him.

An assistant State's Attorney testified for the State. He interviewed the defendant on August 28, 1986. After being advised of his constitutional rights, defendant made an oral statement to him, which was later reduced to writing and signed by the defendant.

In the statement, defendant said that he was with his friends when Julius suggested that they "should make some money by rob-

bing guys who were with prostitutes." According to defendant's statement, they saw the victim with a prostitute having sex in his car. After the prostitute was gone, defendant waited on the corner as a lookout, while the others went over to McKinnon and robbed him at gunpoint. The group then went to a submarine place. Defendant went home after being given a silver dollar, two Kennedy half dollars and some change by Julius Moore.

Officer Kaye Hajduk of the Chicago police department testified that on August 28, 1986, at 2:20 a.m. she was driving down Michigan Avenue on routine patrol with her partner Officer Laurel Johnson. They were flagged down by McKinnon, who told them that he had just been robbed. He told them that the robbers had taken his jacket, shoes, cash and coins.

After driving McKinnon to the station, they continued on patrol. About a half hour later, they observed a male black wearing the jacket he had described. He was also wearing McKinnon's gym shoes. Hajduk and Johnson placed this individual, later identified as Willie Gibson, under arrest, and transported him to the police station.

Following a conversation with Gibson, Hajduk and her partner Johnson, together with Detectives Utter and Dwyer, went to 4500 South State, apartment 905. The door was opened by a woman, who allowed the police to enter. In the bedroom, the detectives found the defendant and placed him under arrest.

On cross-examination, defense counsel asked Officer Hajduk about her conversation with Gibson:

"Q. Now, you had a conversation with Mr. Willie Gibson, is that correct?

A. Yes.

Q. He gave you some information, is that correct?

A. Yes.

Q. He gave you some names, I believe you said?

A. Yes.

Q. He gave you the name of Julius, is that correct?"

The State objected on the grounds of hearsay, and the court sustained the objection.

In his offer of proof, defense counsel elicited that if permitted to answer, Officer Hajduk would testify that Gibson gave the police the name and address of Julius Moore, not that of defendant Miller.

Detective Robert Utter testified about the arrest of the defendant. When he went into the bedroom of apartment 905 at 4500 South State, he found defendant sleeping on the bed. After defendant got out of bed, Utter noticed some coins underneath him on the bed.

These were a silver dollar and two Kennedy half dollars. Defendant was placed under arrest. Julius Moore was also arrested at the apartment.

Utter further testified that defendant and Moore were taken back to the police station and a lineup was conducted. In that lineup, McKinnon identified defendant, Moore and Williams.

On cross-examination, Detective Utter said that after defendant's arrest, the police learned that defendant lived on South Forestville, not in the apartment on South State where he was arrested. Utter also said that no proof that defendant lived in the apartment where he was arrested, such as a gas or light bill, was found.

Defendant's motion for a directed verdict of acquittal was denied, and the defense rested without presenting any witnesses.

In closing arguments, the prosecutor again related the events leading up to the defendant's arrest. The police arrested Willie Gibson wearing McKinnon's jacket and shoes, and "[a]fter talking to Willie Gibson, she [Officer Hajduk] goes along with two other detectives, one being Detective Utter, to an address on south State Street. They go up to an apartment that was named, knocked on the door and was admitted entry. At that time Robert Miller was arrested."

The jury found defendant guilty of armed robbery. The court denied defendant's motion for a new trial and sentenced him to 10 years' imprisonment. Defendant now appeals.

OPINION

Defendant's first claim of error is that he was denied a fair trial and his right of confrontation where the State made comments in opening and closing arguments and elicited testimony from two witnesses which implied that a codefendant, Willie Gibson, who did not testify at defendant's trial, had named the defendant as his accomplice. Defendant contends that the cumulative effect of these comments constituted reversible error. We disagree.

The first alleged error concerns the opening statement by the State. The prosecutor said:

"Those police officers took Mr. McKinnon, the victim, to a police station. *** A short time later, they apprehended an individual by the name of Willie Gibson.

Once Mr. Gibson was arrested, he was brought back to the police station. Mr. Gibson had on the jacket that Mr. McKinnon was wearing when he was robbed and his shoes. The defendant, Willie Gibson, was wearing the victim's shoes.

Leonard McKinnon noted this at the police station. That individual, Gibson, was questioned and that led to the arrest of Robert Miller and that's the individual who's on trial today."

Whether a prosecutor's comments constituted prejudicial error is determined by looking to the language used, its relation to the evidence, and its effect on the defendant's right to a fair and impartial trial. (*People v. Bivens* (1987), 163 Ill. App. 3d 472, 482, 516 N.E.2d 738.) The scope and latitude of the statement are within the discretion of the trial court. *People v. Rader* (1988), 178 Ill. App. 3d 453, 532 N.E.2d 1365.

■■ There was nothing in the language of the opening statement designed or calculated to arouse the prejudice of the jurors. (See *People v. Tiller* (1982), 94 Ill. 2d 303, 447 N.E.2d 174; *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.) The fact that the State said that the police questioned Gibson and that questioning led to the arrest of the defendant is not improper. (*People v. Thibudeaux* (1981), 98 Ill. App. 3d 1105, 424 N.E.2d 1178 (no error where State referred in opening statement to meeting between defendant and others without going into any explicit declarations of co-conspirators, even in light of pretrial order by court to avoid references to statements by co-conspirators).) The language used avoided any reference to the substance of the conversation between the police officers and Gibson and was fully supported by the evidence later introduced at trial. (*People v. Rader* (1988), 178 Ill. App. 3d 453, 462, 532 N.E.2d 1365 (prosecution may comment in opening statement on evidence which it in good faith expects to introduce at trial).) Accordingly, we find there was no error in the State's opening statement.

■■ In regard to the testimony of Officer Hajduk which defendant contends contributed to the cumulative error, we also find no error. She was testifying about the investigation following the arrest of Gibson.

"Q. Did you ask him anything in response to those rights?

A. We asked him—we asked him questions about the other offenders.

\* \* \*

We asked him questions about the other offenders that were with him.

\* \* \*

Q. Once you had this conversation with Mr. Gibson, did you have occasion to go anywhere at this point?

A. With the information that Mr. Gibson gave us, myself and my partner and the detectives went over to 4500 South State apartment 905."

There is no question that the introduction of a co-offender's hearsay statement implicating the defendant violates the defendant's sixth amendment (U.S. Const., amend. VI) right to confrontation. (*Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.) But police testimony regarding investigatory procedures which reveals the occurrence of a conversation with a co-offender but not its contents is not hearsay, as it is based upon the officer's personal knowledge. (*People v. Gacho* (1988), 122 Ill. 2d 221, 248, 522 N.E.2d 1146.) As long as the testimony recounting the steps taken in a police investigation does not gratuitously reveal the substance of their statements and so inform the jury that they told the police that the defendant was responsible for the crime, such testimony does not violate the sixth amendment and is admissible. (*People v. Henderson* (1990), 142 Ill. 2d 258, 304, 568 N.E.2d 1234.) "The mere fact that one of the many inferences which the jurors could have drawn from this testimony was that [codefendant] told the police defendant [was involved] *** does not mean that defendant was denied his sixth amendment rights when [the codefendant] did not testify at trial." *Henderson* (1990), 142 Ill. 2d at 303-04. See also *People v. Simms* (1991), 143 Ill. 2d 154, 572 N.E.2d 947 (it is not error to admit such testimony even though it may suggest that a nontestifying witness has implicated the defendant); *People v. Hunter* (1984), 124 Ill. App. 3d 516, 529, 464 N.E.2d 659 (such evidence "is admissible although the inference logically to be drawn therefrom is that the information received motivated the officers' subsequent conduct").

As with Officer Hajduk's testimony, we disagree with defendant's contention that it was error to admit the testimony of Detective Utter, who said "there was one that was in custody and as a result of information we visited other locations looking for–," and who was merely recounting the steps taken in the investigation, which as discussed above is admissible evidence so long as the substance of the out-of-court conversation was not revealed.

■ Regarding the State's closing argument, we likewise find no error. Here, too, there was no disclosure of the substance of the conversation with Gibson.

"She (Officer Hajduk) picks him up, she arrests Willie Gibson at that time and takes him back to the station.

After talking to Willie Gibson, she goes along with two other detectives, one being Detective Utter, to an address on

south State Street. They go up to an apartment that was named, knocked on the door and was [*sic*] admitted entry. At that time Robert Miller was arrested."

Although we find no overt error in the State's closing argument, we do not condone the repeated and unnecessary reference by the State's Attorney to that conversation. Such repetition would serve mainly to reinforce the possible inference which the trier of fact would make that the co-offender had identified the defendant as an accomplice. For that reason, unnecessary repetition alluding to such conversations should be avoided. This repetition only serves to increase the suspicion of such an ulterior motive. The cases of *People v. Johnson* (1987), 116 Ill. 2d 13, 28, 506 N.E.2d 563, and *People v. Campbell* (1983), 115 Ill. App. 3d 631, 450 N.E.2d 1318, cited by defendant are inapposite, however. In those cases, in addition to what was done here, there was explicit testimony as to the content of the out-of-court statements. Moreover, in *Campbell*, the prosecution persisted in its objectionable questioning in spite of orders by the court to desist, and commented upon the objectionable testimony four times in closing arguments.

In any event, even if we were to find error in the State's closing argument, it would not constitute reversible error. In order for a remark made by the State in closing argument to be deemed reversible error, "the complained-of remark must have resulted in substantial prejudice to the accused, such that the verdict would have been different had it not been made." (*People v. Morgan* (1991), 142 Ill. 2d 410, 453, 568 N.E.2d 755, *cert. granted* (1991), ___ U.S. ___, 116 L. Ed. 2d 239, 112 S. Ct. 295.) Here, the remarks were comments on the evidence properly introduced at trial. Due to the overwhelming evidence of defendant's guilt, they did not result in substantial prejudice to the defendant. We cannot say that the verdict would have been different absent these remarks.

There was overwhelming evidence of defendant's guilt. Defendant, in his own unrecanted statement to the assistant State's Attorney, admitted his participation in the robbery. In addition, when the police arrested defendant, they found items taken from the victim, a silver dollar and two Kennedy half dollars, on the bed where defendant had been lying. Finally, the victim identified defendant twice, first in a lineup the morning after the robbery, and later in open court.

■ Defendant's second contention is an outgrowth of his first argument. He urges that he should have been allowed on cross-examination of Officer Hajduk to elicit admittedly hearsay testimony that Gibson named Julius, not the defendant, in order to correct the false

impression her direct testimony had created that a codefendant had implicated the defendant. Although we have held that the use of the conversation with Gibson as a means of establishing the steps leading up to defendant's arrest was not error, this does not foreclose the possibility that the jury would be left with the erroneous impression that Gibson had implicated the defendant. Consequently, there is no reason why the court should not have permitted the cross-examination to disavow any such inference. We agree that permitting this cross-examination would have been preferable, but find that failure to do so falls short of an abuse of discretion.

In *People v. Weaver* (1982), 92 Ill. 2d 545, 442 N.E.2d 255, the court held that when the State introduced portions of a defendant's conversation with a neighbor, the defendant must have the right on cross-examination to introduce the entire conversation. "In view of the possibility that the jurors would be misled into thinking that the defendant has said nothing else, we believe the trial court should have allowed [the neighbor] to testify to the defendant's statement." *Weaver*, 92 Ill. 2d at 556-57.

In *People v. Payne* (1983), 98 Ill. 2d 45, 456 N.E.2d 44, the court found that there was no error in allowing the State to introduce evidence on redirect examination to correct a false implication created by defense questioning on cross. "[A]llowing the defense or prosecution to misrepresent to the jury the actual facts of the case is neither consistent with the proper functioning and continued integrity of the judicial system nor with the policies of the exclusionary rules." *Payne*, 98 Ill. 2d at 51-52.

In *People v. Wilbert* (1973), 15 Ill. App. 3d 974, 305 N.E.2d 173, the court applied the doctrine of "curative admissibility" in holding that it was not error to allow the State to introduce rebuttal evidence regarding defendant's gang affiliation, finding that the defendant had opened the door to the subject of gang membership. "Under the circumstances of this case applying the rule of curative admissibility which allows an opponent to introduce similar evidence in order to combat any prejudice which may ensue from the original evidence was the better way to proceed." *Wilbert*, 15 Ill. App. 3d at 987.

Here, it was the defendant rather than the State, as in *Payne* and *Wilbert*, who sought to introduce otherwise inadmissible evidence. It follows, *a fortiori*, that a defendant should be permitted the same latitude as the State in introducing otherwise inadmissible evidence to counter a possible misconception or false impression created by the State's evidence. Although, unlike *Weaver*, the State did not directly introduce any of the conversation between Gibson and the police, the

jurors may have nonetheless been misled to believe that Gibson named the defendant as an accomplice. We believe, as did the court in *Weaver*, that the court should have allowed the witness to testify to the conversation. Defendant should have been allowed to introduce the testimony that Gibson had not named the defendant as an accomplice.

However, the trial court's limitation on defendant's cross-examination of Hajduk does not require reversal of his conviction. The latitude of cross-examination rests in the sound discretion of the trial court and will not be disturbed on review absent a clear abuse of that discretion resulting in manifest prejudice to the defendant. (*People v. Maldonado* (1989), 193 Ill. App. 3d 1062, 1069, 550 N.E.2d 1011.) To determine the constitutional sufficiency of cross-examination, the court looks not to what the defendant was not allowed to ask, but rather what he was allowed to do, an inquiry made by looking at the entire record. *Maldonado*, 193 Ill. App. 3d 1062, 550 N.E.2d 1011.

As previously noted, there was no testimony elicited by the State which specifically indicated that Gibson had named the defendant. Nor were such comments made during opening or closing arguments. That the jurors may have drawn such an inference is not a certainty, and the fear that defendant was prejudiced from such an inference is only conjecture.

Moreover, any false implication that may have been made was somewhat lessened by the testimony of Detective Utter. On direct examination, Utter said that Julius Moore was arrested along with the defendant at the apartment at 4500 South State. On cross-examination, Utter said that after defendant's arrest, the police learned that the defendant lived on South Forestville, not South State where he was arrested. Further, the police found no evidence in the apartment, such as gas or electric bills addressed to the defendant, which might indicate that it was his apartment. The introduction of this evidence tended to establish that the defendant was not a resident of the apartment where he was arrested, thereby diluting any inference the jury might otherwise make that Gibson had identified the defendant as the person to be apprehended at the State Street apartment. This testimony would have permitted the defendant to argue in closing, and for the jury to consider, that it was Moore's name and address which Gibson provided to the police, not that of the defendant. See *People v. Boyd* (1980), 88 Ill. App. 3d 825, 410 N.E.2d 931 (restriction of defendant's cross-examination of police officer proper where defendant was able to solicit same information through testimony of other witnesses).

Further, even if defendant were denied his right of confrontation, this does not necessarily require reversal. (*People v. Johnson* (1987), 116 Ill. 2d 13, 506 N.E.2d 563 (confrontation errors, although constitutional, do not automatically warrant reversal).) If we are able to conclude that the error was harmless beyond a reasonable doubt, we may affirm the conviction notwithstanding the error (*People v. Johnson* (1987), 116 Ill. 2d 13, 506 N.E.2d 563), and would do so here.

As discussed previously, the evidence of defendant's guilt was overwhelming. Defendant admitted his participation, and the police found proceeds of the robbery when they arrested the defendant. Also, the victim twice identified the defendant.

Defendant, however, argues that the errors here were not harmless, citing *People v. Mullen* (1990), 141 Ill. 2d 394, 566 N.E.2d 222, where the court reversed a conviction based upon a single improper closing statement by the prosecution. The court rejected the State's argument that defendant's confession was sufficient by itself to sustain a conviction, saying "a confession standing alone, in light of other conflicting evidence, may not be enough to sustain a murder conviction, when a fundamental error occurred at trial." (*Mullen*, 141 Ill. 2d at 403.) As discussed above, however, defendant's confession in this case did not stand alone. The police found items taken from the victim in the bed where they arrested defendant. Also, the victim twice identified the defendant.

For all the above reasons, we find no reversible error in any of the complained-of testimony, the limitation on cross-examination or the statements by the prosecution, either individually or cumulatively, and affirm defendant's conviction.

Defendant's final contention is that he should receive a reduced sentence or a new sentencing hearing due to the fact that the court's characterization of the armed robbery as a "very aggravated situation" was not supported by the evidence. We disagree.

In sentencing defendant to a term of 10 years, the court said:

"Robert Miller, you have been convicted by a jury to the charge of armed robbery. In this very aggravated situation based upon the evidence I heard I have reviewed all the facts and all the witnesses' testimony this morning. I will hearby sentence you to serve a term of ten years in the Illinois State Penitentiary."

Defendant interprets these comments as indicating that the trial court perceived the armed robbery at issue as more than "a basic armed robbery which did not contain factors more aggravating than the basic elements of the offense itself." He contends that just the opposite

is true: that this robbery was less aggravated than most armed robberies.

Defense counsel emphasized that the defendant, 21 years old with no prior convictions, was a "bit player" in the robbery, a lookout a block away from the actual robbery. As a result, defendant asked for leniency.

Imposition of a sentence is a matter of judicial discretion, and absent an abuse of that discretion, we may not disturb a sentence upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) We find no such abuse here.

Although a court in imposing sentence may not consider the bare elements of an offense as aggravating factors (see *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906), it may consider " 'the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant.' " *People v. Saldivar* (1986), 113 Ill. 2d 256, 268-69, 497 N.E.2d 1138, quoting *People v. Hunter* (1981), 101 Ill. App. 3d 692, 694, 426 N.E.2d 666; *People v. Tolliver* (1981), 98 Ill. App. 3d 116, 117-18, 424 N.E.2d 44.

> "While the classification of a crime determines the sentencing range, the severity of the sentence depends upon the *degree of harm* caused to the victim and as such may be considered as an aggravating factor in determining the exact length of a particular sentence, *even in cases where serious bodily harm is arguably implicit in the offense for which a defendant is convicted.*" (Emphasis in original.) *Saldivar*, 113 Ill. 2d at 269.

█ We need not conclude that the trial court's remarks indicate that it improperly relied upon the basic elements implicit in the offense of armed robbery as factors in aggravation. The trial court here stated that it had considered all the facts and the witnesses' testimony prior to imposing sentence. Its characterization of this crime as a "very aggravated situation" is not unsupported by the facts, as pointed out by the State at the sentencing hearing. The lone victim was robbed by four persons, one armed with a gun, at 2 o'clock in the morning. The victim was a 55-year-old man, while the four robbers were young men, who ransacked his car, made him lie on the ground and took from him virtually everything that could be taken: his clothes, shoes, jewelry and money.

It is clear from the sentence actually imposed that the court did not abuse its discretion in sentencing defendant to 10 years' imprisonment. The sentence imposed is not disproportionate to the circumstances of the crime committed. Armed robbery is a Class X felony, punishable by 6 to 30 years' imprisonment. (Ill. Rev. Stat. 1989, ch.

38, par. 1005—8—1(a)(3).) Here, defendant's sentence of 10 years is within the statutory limit, and is, in fact, at the low end of the statutory range. Accordingly, we affirm defendant's sentence as well as his conviction.

Affirmed.

McNULTY, P.J., and LORENZ, J., concur.