THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAMONE WRIGHT, a/k/a Ramon Fox and Ramon White, Defendant-Appellant.

Fifth District    No. 5—92—0509

Opinion filed April 18, 1994.

Daniel M. Kirwan and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

---

[1]Justice Goldenhersh participated in oral argument; Justice Chapman was later substituted on the panel.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:

Defendant, Ramone Wright, was convicted of armed robbery (Ill. Rev. Stat. 1991, ch. 38, par. 18—2(a)), by a jury, and was sentenced to 12 years' incarceration. He appeals, raising one issue on appeal: that he was denied his due process rights to confront the witnesses against him when the court limited his cross-examination of a State's witness regarding statements made by defendant. We affirm for the reasons set forth below.

The facts adduced at trial were as follows: At approximately 3:30 a.m. on September 24, 1991, Christopher Blanchard (Blanchard) and his girlfriend, Chris O'Rourke (O'Rourke), were driving home after attending a barbecue at Blanchard's cousin's house in East St. Louis. O'Rourke, who was driving her 1984 Buick Regal, stopped at a Clark service station to use the restroom.

While she was in the restroom, Blanchard sat in the car and waited. Defendant approached the passenger-side window, bent down towards the window, and asked Blanchard if there was a restroom in the service station. Blanchard replied that there was, told the defendant that the restroom was occupied, and turned and motioned to his left, away from the window, to indicate where the restroom was. When Blanchard turned back to defendant, defendant had a gun pointed at his face. Blanchard testified that he looked at the gun, then looked up at defendant's face to see if he were serious, saw that he was, then looked back at the gun. According to Blanchard, the area was well lit.

Defendant told Blanchard to step out of the car and to step behind the service station's dumpster, which was nearby. Blanchard complied. As Blanchard went behind the dumpster, he looked back and saw defendant get into the passenger side of the car and move over to the driver's side. When defendant did this, the overhead dome light was on, and Blanchard was able to see defendant's face. Although Blanchard was behind the dumpster, he was able to see defendant's face through the windshield as defendant backed the car out onto State Street and drove away.

O'Rourke came out of the restroom just as defendant drove off the service station lot. She did not see Blanchard immediately as he was behind the dumpster. However, she was able to see that it was not Blanchard driving her car away. Blanchard came from behind the dumpster and told her what had happened.

Blanchard called the East St. Louis police to report the theft of O'Rourke's car. While Blanchard and O'Rourke waited for the East St. Louis police to arrive, an Illinois State trooper car passed by and they hailed it down. The State trooper allowed them to sit inside the patrol car, and they told the trooper what had transpired. Approximately 20 to 30 minutes after defendant had stolen O'Rourke's car, Officer Alecia Bruce of the East St. Louis police arrived at the service station, and she took over the investigation of the robbery.

Blanchard and O'Rourke were in Bruce's patrol car giving details of the robbery and a description of defendant when a broadcast came over Officer Bruce's police radio informing the officer that a car matching the description of O'Rourke's car had been located near the Gompers Homes, a housing project in East St. Louis. Officer Bruce immediately took O'Rourke and Blanchard to that location so that O'Rourke could identify her car.

When Officer Bruce arrived at the Gompers Homes, there were already three or four officers at the scene. Additionally, two men, one of whom was defendant, were standing behind the stolen car. As Officer Bruce pulled up and stopped the patrol car, Blanchard pointed to defendant, who had his back to him, and informed Officer Bruce that defendant was the person who had held the gun to his face and had taken the car.

Officer Bruce got out of her car and talked to the other officers present. Subsequently, Blanchard got out of the car and again identified the defendant as the man who had taken O'Rourke's car after holding a gun on him. Blanchard told the officers that he had never before seen the other person with defendant. O'Rourke identified her car. O'Rourke went up to the driver's side of her car and looked inside the open door. There she saw a chrome-colored gun lying between the driver's seat and the door. Defendant was placed under arrest at approximately 4 a.m. or 4:15 a.m., about 45 minutes after the robbery had taken place.

Testimony was also presented at trial regarding the locating of O'Rourke's car and defendant's arrest, as well as the arrest of the other person found in the stolen car with defendant, Percy Edwards. Edwards was subsequently cleared and released.

Defendant presented the testimony of David Peck, a forensic scientist for the Illinois State Police crime lab. Peck had examined the gun found in O'Rourke's car for latent prints and had found a latent palm print on the gun. Peck also received defendant's fingerprint cards from the East St. Louis police, which were taken when defendant was booked. Peck was unable to compare defendant's palm print with the palm print found on the gun as defendant's palm print was

incomplete. Peck informed the East St. Louis police that he was unable to make a comparison as he needed a full palm print, but the police never sent him a complete palm print of defendant.

The State, in rebuttal of Peck's testimony, had Detective Sandra Muckensturm of the East St. Louis police department testify that defendant had told her in her interview with him that he had handled the gun. Therefore, she did not send a fully inked palm print of defendant's to the crime lab. On cross-examination, defense counsel elicited from Muckensturm that defendant had told her that the gun was under the seat when he got inside the car. The court refused to allow defendant to ask Muckensturm the following question: "Did he tell you that he then reached under the seat, handled the weapon, and put it back?" The court also refused to let defendant ask any other questions regarding defendant's other exculpatory statements made to Detective Muckensturm.

As noted previously, the jury found defendant guilty of the offense of armed robbery. Defendant filed a post-trial motion, which was denied at the sentencing hearing. This appeal followed.

Defendant's sole issue on appeal is that he was denied his due process rights to fully confront the witnesses against him when the court limited his cross-examination of Detective Muckensturm regarding defendant's statements about how his prints came to be on the gun. Defendant claims that Detective Muckensturm's testimony misled the jury, and he should have been allowed to further question her to explain the rest of his conversation with her under the "completeness doctrine."

Under the "completeness doctrine," a party is permitted to introduce the balance of a statement in order to explain, qualify, or otherwise enlighten that portion of a statement introduced by the other party. This allows the party to place the statement in context, so that the jury can make an informed assessment of the statement, *i.e.*, to assure that the jury is not misled. (*People v. Olinger* (1986), 112 Ill. 2d 324, 493 N.E.2d 579; *People v. Pietryzk* (1987), 153 Ill. App. 3d 428, 505 N.E.2d 1228.) However, to be admissible, the remainder of the statement must concern what was said on the same subject at the same time and must be relevant and material. (*People v. Pietryzk* (1987), 153 Ill. App. 3d 428, 505 N.E.2d 1228.) Additionally, a defendant or prosecutor cannot be allowed to misrepresent to a jury the actual facts of the case, as this is not consistent with the proper functioning and continued integrity of the judicial system or with the policies of the exclusionary rules. (*People v. Payne* (1983), 98 Ill. 2d 45, 456 N.E.2d 44.) The principle set out in *People v. Payne* has been referred to as the "curative admissibility" doctrine. (*People v. Miller*

(1992), 225 Ill. App. 3d 92, 589 N.E.2d 617.) In the instant case, these two doctrines compete for ascendancy.

Here, the statements elicited on direct examination by the State were in its questioning of the rebuttal witness, Detective Muckensturm. Muckensturm's testimony was offered in response to David Peck's testimony in defendant's case in chief. Peck's testimony that he had not received a second set of palm prints from the East St. Louis police, after notifying the police that he needed them in order to do a comparison, could have left the jury with the misconception that the police did not do their job, and that the police did not send the palm prints as requested because the prints would not have matched those found on the gun. This testimony by the defendant's witness misled the jury, giving rise to the State's presenting Muckensturm's testimony under the "curative admissibility" doctrine. In other words, what may have been inadmissible testimony concerning a statement made by defendant in his interview with Detective Muckensturm became admissible to show that the police were not being negligent in their investigation of the crime, and instead the testimony showed that the resubmitting of the defendant's palm prints was unnecessary since defendant told Muckensturm that he had handled the gun. In effect, defendant "opened the door" for Detective Muckensturm's testimony, and he cannot now be heard to complain that her testimony misled the jury.

In any event, we find that defendant's sixth amendment right to confront the witnesses against him was not violated by the court's refusal to let him ask the question he wanted to on cross-examination. The court did allow defendant to ask Detective Muckensturm on cross-examination if defendant had told her the gun was already in the car when defendant got into the car, and Muckensturm replied affirmatively. This was sufficient to allow the jury to infer that defendant only came into contact with the gun after he was in the car and that, therefore, it was not defendant who had pointed the gun at Blanchard when the car was taken. To have allowed defendant to further inquire into the statements defendant made to Detective Muckensturm would have allowed him to place his exculpatory statements about how he obtained possession of the car and the gun into the evidence without subjecting defendant to testifying and exposing him to impeachment through cross-examination. *People v. Olinger* (1986), 112 Ill. 2d 324, 493 N.E.2d 579.

In addition, even if the court's limiting of defendant's cross-examination of Detective Muckensturm was arguably erroneous or an abuse of discretion, the error would only be harmless. In *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 89 L. Ed. 2d 674, 106 S. Ct.

1431, the Supreme Court held that the harmless-error analysis can be applied to allegations of denial of a defendant's constitutional right to confront his witnesses through cross-examination. In doing so, the Supreme Court set out the following factors that should be considered:

> "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." (*Delaware v. Van Arsdall*, 475 U.S. at 684, 89 L. Ed. 2d at 686-87, 106 S. Ct. at 1438.)

When the foregoing factors are applied to the case *sub judice*, it is clear that the error, if any, was harmless. First, the testimony presented by the State was in rebuttal and not in its case in chief; therefore, had defendant not introduced his evidence by David Peck, the witness' testimony would not have been necessary for the State's case. Although the witness' testimony was not cumulative and was not corroborated or contradicted, defendant's cross-examination was sufficient. Lastly, the strength of the prosecution's case was more than sufficient to prove defendant guilty beyond a reasonable doubt, even though defendant attempted to show at trial that Blanchard misidentified him as the perpetrator. The evidence against the defendant was that he was identified by the victim within a short period of time of the commission of the crime. In addition, Blanchard also identified him as the man who committed the offense at trial. Blanchard's testimony established that he was able to see defendant's face as the lighting was good and the time he had to look at defendant was sufficient to prevent misidentification. Moreover, defendant was sitting in the driver's seat of the stolen car at the time of his arrest. The gun, which was identified at trial by Blanchard as the gun used by defendant, was found beside the driver's seat at the time of defendant's arrest. The evidence of defendant's guilt was thus overwhelming.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

WELCH and MAAG, JJ., concur.